437 So.2d 725 (1983)
Joseph ARMBRUSTER, Appellant,
v.
William R. ALVIN and Gulf Insurance Company, Appellees.
Nos. 82-707, 82-1172.
District Court of Appeal of Florida, Third District.
September 6, 1983.
Rehearing Denied October 7, 1983.
George, Hartz, Burt & Lundeen and Charles George, Miami, for appellant.
Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane and Mark R. Houck, Blackwell, Walker, Gray, Powers, Flick & Hoehl and Diane H. Tutt and James Tribble, Miami, for appellees.
Before HENDRY, HUBBART and NESBITT, JJ.
*726 NESBITT, Judge.
Armbruster sued Alvin and Gulf Insurance Company[1] for damages alleging that Alvin, as escrow agent, violated the terms of an escrow agreement by recording a deed prematurely and by failing to deliver to Armbruster certain escrowed property. The defendants moved for summary judgment upon several grounds and the trial court entered summary final judgment determining that there was no escrow agreement as a matter of law. Because we disagree with this ruling as well as the alternate grounds raised by the defendants, we reverse.
On March 16, 1977, Armbruster and two Florida corporations executed a Corporate Stock Exchange Agreement whereby Armbruster was to transfer his interest in certain real property, patents, and patent applications to Amber Corporation in exchange for 1,200 shares of its common stock. The agreement also provided that Coolaire/Nordic International Corporation was to transfer all of its inventory, equipment, and physical assets to Amber Corporation in exchange for 2,500 shares of Amber stock, a promissory note from Amber in the amount of $156,000, and the acknowledgment of the sum of $100,000 due to Coolaire/Nordic from Amber on open account. In addition, Armbruster was to be named president of Amber Corporation. The agreement expressly stated that closing would take place simultaneously with execution of the agreement and would be an escrow closing. All the property was to be delivered in escrow to William R. Alvin. Alvin was not a signatory to the Corporate Stock Exchange Agreement.
For several months in 1977, Armbruster operated Amber Corporation as its president. It is alleged that during this time, all of Armbruster's escrowed property was transferred pursuant to the Corporate Stock Exchange Agreement, but that Armbruster never received his 1,200 shares of Amber stock. Armbruster and Amber parted ways in September of 1977. Armbruster subsequently brought a suit for rescission against Amber, Coolaire/Nordic, and transferees or assignees of the properties deposited with Alvin by Armbruster. The final judgment in that suit cancelled the Corporate Stock Exchange Agreement ab initio. Alvin was not a party to the rescission action.
Attached to Armbruster's complaint in the present suit was a letter bearing the same date as the Corporate Stock Exchange Agreement and typed on Alvin's law office letterhead paper. This letter was to "acknowledge receipt of the various deeds, assignments, bills of sale, shares of corporate stock, et cetera, as Escrow Agent under the Corporate Stock Exchange Agreement between the parties dated March 16, 1977." The terms of the letter were agreed to by signature of the president of Coolaire/Nordic and by signature of Armbruster in his individual capacity and as president of Amber Corporation. The letter also contained the typewritten complimentary close "Very Truly Yours, William R. Alvin," but was unsigned by him.
It is well settled that an escrow agent may be liable in damages for breach of the fiduciary duties owed to the parties to the escrow. Tucker v. Dr. P. Phillips Co., 139 F.2d 601 (5th Cir.1943) (Florida law); First National Bank of Belleair Bluffs v. Maricopa Corp., 230 So.2d 191 (Fla.2d DCA 1970); see Biadi v. Lawyers Title Insurance Corp., 374 So.2d 30, 34 (Fla.3d DCA 1979) (an escrow holder has a fiduciary responsibility and is required to exercise reasonable skill and ordinary diligence). Summary judgment is appropriate only where it is shown that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fla.R.Civ.P. 1.510(c). The defendants seize upon the absence of Alvin's signature on the acknowledgment of escrow as their first ground for supporting the trial court's summary final judgment.
*727 The mere fact that the acknowledgment of escrow was not signed by Alvin does not mean that as a matter of law it was not binding upon him. Gateway Cable T.V., Inc. v. Vikoa Construction Corp., 253 So.2d 461 (Fla. 1st DCA 1971). Assent may be shown by acts or conduct of the parties. Gateway Cable T.V., Inc. v. Vikoa Construction Corp., supra. The record before us certainly evinces an issue of fact as to whether Alvin acted as an escrow agent pursuant to the March 16, 1977 Corporate Stock Exchange Agreement. It may well be, therefore, that he was bound by the conditions therein and is amenable to suit for any breach of his duties thereunder.
The argument is made, nonetheless, that even assuming Alvin's assent to serve as escrow agent under the Corporate Stock Exchange Agreement, no valid escrow arose therefrom. In this regard, the defendants claim that the deed placed into escrow by Armbruster was improperly executed, failed to name a grantee, and thus could not import the legal obligation necessary to the creation of an escrow. Love v. Brown Development Co. of Michigan, 100 Fla. 1373, 131 So. 144 (1930). It is irrelevant though that the deed may not have been in proper form when originally deposited, as long as it was properly executed to Amber Corporation as grantee at the time of the alleged breach of duties by Alvin. On this record, the facts as to this issue remain disputed. Moreover, if it turns out that the deed was improperly executed when Alvin recorded it, he may be estopped to raise this defense. At present, however, we cannot and do not attempt a resolution of that issue.
A further challenge to the existence of a valid escrow is based upon the judgment rendering the Corporate Stock Exchange Agreement void ab initio. The defendants contend that if by judgment there was never any agreement creating the escrow, then there was never any escrow. This inventive proposition ignores the realities of escrow arrangements. Were we to accept it, escrow agents could intentionally or negligently scuttle escrow transactions, forcing one of the parties or both to rescind their agreements, with the escrow agent taking cover behind the judgment of rescission. This we cannot condone. See Montgomery v. Bank of America Nat. Trust & Savings Ass'n, 85 Cal. App.2d 559, 193 P.2d 475 (1948) (where escrow holder changed description in deed in violation of express instruction of grantors, grantors were entitled to rescind sale upon returning purchase money to purchasers and escrow holder would be liable in damages for costs and expenses incurred by grantors in recovering their title).
As a corollary, the defendants assert that Armbruster, having already obtained rescission of the Corporate Stock Exchange Agreement, is now barred by the doctrine of election of remedies from maintaining suit against Alvin for breach of his escrow duties. The doctrine of election of remedies applies where the alternative remedies are repugnant and inconsistent. Encore, Inc. v. Olivetti Corp. of America, 326 So.2d 161, 163 (Fla. 1976). Rescission of the escrowed transaction and recovery of damages against the escrowee are not necessarily inconsistent remedies. See Montgomery v. Bank of America Nat. Trust & Savings Ass'n, supra; cf. Earven v. Smith, 127 Ariz. 354, 621 P.2d 41 (Ct.App. 1980). To the extent they are not and to the extent that any damage not remedied by the judgment of rescission was actually caused by Alvin, see Allen v. Allen Title Co., 77 N.M. 796, 427 P.2d 673 (1967), he should be liable therefor.[2]
Lastly, the defendants seek to avoid suit by setting up the defense of ratification and waiver. They claim that Armbruster may not now sue Alvin for allegedly improper recordation of a deed *728 when in his capacity as president of Amber Corporation, Armbruster used corporate funds to pay mortgages and taxes on the deeded property and even listed the property for sale. We cannot agree. Armbruster, as president of a corporation, had a duty to protect its interests in the corporate property and could not simply act on behalf of his own personal interests. Orlando Orange Groves Co. v. Hale, 107 Fla. 304, 144 So. 674 (1932); Tillis v. United Parts, Inc., 395 So.2d 618 (Fla. 5th DCA 1981). Under these circumstances, it cannot be said that as a matter of law Armbruster waived or ratified the recordation of the deed. That Armbruster did not move to upset the escrow transaction until after he was removed as president of Amber Corporation only reinforces that there is an issue of fact as to waiver and ratification. Consequently, the cases cited by defendants on this point, such as Tollius v. Dutch Inns of America, Inc., 244 So.2d 467 (Fla. 3d DCA 1970), cert. denied, 247 So.2d 437 (Fla. 1971) and Alamo Lumber Co. v. Lawyers Title Insurance Corp., 439 S.W.2d 423 (Tex.Civ. App. 1969), are inapposite here.
The summary final judgment appealed from is reversed and the cause remanded for further consistent proceedings.
Reversed and remanded.
NOTES
[1] Gulf Insurance Company is a party to these proceedings as Alvin's professional liability insurer.
[2] Although it was not really argued to us we should perhaps note with regard to our discussion of the judgment of rescission that such judgment does not operate on principles of res judicata to bar this suit against Alvin, a fiduciary of certain parties to the rescission action. See generally 46 Am.Jur.2d Judgments § 568 (1969). A damages suit against an escrow holder for breach of his fiduciary duties is not barred by the doctrine of res judicata even though a damages suit against the other party to the escrow would be so barred. Sanwick v. Puget Sound Title Insurance Co., 70 Wash.2d 438, 423 P.2d 624 (1967).