522 So.2d 993 (1988)
MASERATI AUTOMOBILES INCORPORATED and Alfieri Maserati, S.P.A., Appellants/Cross-Appellees,
v.
Robert CAPLAN, Appellee/Cross-Appellant.
Nos. 87-1163, 87-1635.
District Court of Appeal of Florida, Third District.
March 29, 1988.
*994 Yelen & Yelen and Jan Yelen, Coral Gables, for appellants/cross-appellees.
Young, Stern & Tannenbaum and Barry S. Franklin and Jeremy Koss, North Miami Beach, for appellee/cross-appellant.
Before HUBBART, BASKIN and DANIEL S. PEARSON, JJ.
BASKIN, Judge.
Maserati Automobiles, Inc., and Alfieri Maserati [Maserati] appeal a final judgment entered pursuant to a jury verdict in Robert Caplan's favor. Caplan cross-appeals the attorney's fee award in an action he brought against Maserati predicated on its alleged sale to him of a defective car.
The jury awarded Caplan damages of $33,176.00 under the Motor Vehicle Warranty Enforcement Act (Lemon Law), Chapter 681, Fla. Stat. (1983), or the Magnuson-Moss Warranty Act, 15 U.S.C.A. §§ 2301-12 (1982), $17,000 on his negligence claim, and $17,000 on the breach of implied warranty of merchantability claim. The court entered a final judgment for $50,176.00, the total of $33,176 and one of the alternative recoveries of $17,000. The court granted Caplan $38,624.60 attorney's fees.
In this appeal, Maserati first contends that the trial court erred in denying its motion for directed verdict as to the *995 breach of implied warranty and negligence counts based on its assertion that Caplan failed to present evidence of the vehicle's value and rental value. Holding that Caplan presented sufficient evidence as to the value of the car, we affirm the trial court's ruling. Under the Lemon Law, Caplan is entitled to recover the purchase price of the car, including all reasonably incurred collateral charges, upon proof that Maserati is unable to bring the car into conformity with its express warranty. § 681.104(2)(a)2, Fla. Stat. (1983). In addition, Caplan is entitled to damages for loss of the vehicle's use. See Hampton-Chrysler-Plymouth-Dodge, Inc. v. White, 448 So.2d 87 (Fla. 1st DCA 1984) (warranty action); Miles v. Kavanaugh, 350 So.2d 1090 (Fla. 3d DCA 1977) (same); Meakin v. Dreier, 209 So.2d 252 (Fla. 2d DCA 1968) (negligence); Wajay Bakery v. Carolina Freight Carriers Corp., 177 So.2d 544 (Fla. 3d DCA 1965) (same); Airtech Serv., Inc. v. MacDonald Constr. Co., 150 So.2d 465 (Fla. 3d DCA 1963) (same). See also Annot., Buyer's Incidental and Consequential Damages from Seller's Breach under U.C.C. § 2-715, 96 A.L.R.3d 299 (1979).
At trial, Caplan testified as to the purchase price of the car; he corroborated his testimony by entering the bill of sale into evidence. In addition, an expert witness testified that the car was "totally undriveable or unusable ... [and] [y]ou cannot start it, run it, drive it... . [or] ... do anything with it." Caplan also testified that the car was completely inoperable. Thus, substantial competent evidence supports the jury's finding that Maserati did not bring the car into conformity with its express warranty; that the condition of the car rendered it valueless to Caplan; and that Caplan was entitled to recover damages.
Furthermore, Maserati argues that there was no basis for the jury's award of damages for loss of use of the vehicle. On this point, the court, without objection, instructed the jury that if it found that Caplan lost the use of the vehicle, it should award him damages in the amount necessary to rent a vehicle, even though another vehicle was not rented. Caplan presented expert testimony establishing the actual cost of the car at $34.32 per day.[1] The expert determined that Caplan was deprived of the use of his vehicle on 618 days. She concluded that the loss of the use of the car amounted to $21,209.52. Her testimony refutes Maserati's arguments.
In Meakin, the court stated that "[t]he measure of damage is `loss of use' not rental value. Rental value is merely indicative of `loss of use' value." Meakin, 209 So.2d at 254. Thus, although Caplan's expert testified only as to the per diem cost of the car during the time it was inoperable rather than the actual cost of a rental car, her testimony is evidence of the value of loss of use. Accordingly, we hold that the jury reached its decision through competent evidence.
Next, Maserati argues that the trial court erred in failing to require Caplan to make an election of remedies.[2] Maserati *996 maintains that, because Caplan recovered the purchase price and collateral charges (insurance payments, rental car receipts, repair and hotel bills), an award of damages for loss of use constitutes double recovery. We reject its assertion.
The doctrine of election of remedies seeks "to prevent a double recovery for the same wrong... . only where the remedies in question are coexistent and inconsistent." Barbe v. Villeneuve, 505 So.2d 1331, 1332 (Fla. 1987) (citations omitted). If the remedies are not inconsistent and "to the extent that any damage [is] not remedied by the judgment ..., [defendant] should be liable therefor." Armbruster v. Alvin, 437 So.2d 725, 727 (Fla. 3d DCA 1983) (citation and footnote omitted), review denied, 450 So.2d 485 (Fla. 1984).
In the cause before us, the final judgment entered pursuant to a general jury verdict awarded Caplan $50,176.[3] Recovery of the purchase price and collateral charges under the Lemon Law does not fully compensate Caplan; he is not foreclosed from recovering damages for loss of use of the car under his other claims. Because the remedies serve different functions in recompensing Caplan for his damages, no double recovery exists.[4]
Next, Maserati argues that the court correctly determined that Caplan was entitled to attorney's fees only when authorized by the Lemon Law and the Magnuson-Moss Act. Maserati asserts that counsel fees should be reduced by the time spent preparing non-statutory claims. The trial court incorrectly based the award on its own recollection of the case rather than on evidence presented by the parties. Maserati presented evidence that a reasonable fee was $7,500-$10,000 for the time spent on the Lemon Law and Magnuson-Moss claims. Asserting that the time expended on these claims could not be determined, Caplan presented expert testimony that a reasonable fee for the entire case was between $51,250 and $61,500. Recognizing that "the claims involved a common core of facts and were based on related legal theories," Chrysler Corp. v. Weinstein, 522 So.2d 894 (Fla. 3d DCA 1988), and therefore, that the majority of time spent by counsel could not be separated as to the various claims, see Chrysler Corp.; State Farm Fire & Casualty Co. v. Becraft, 501 So.2d 1316 (Fla. 4th DCA 1986), the court endeavored to separate easily discernible fee bases. Instead of awarding Caplan a fee for the entire case, the trial court awarded Caplan attorney's fees of $38,624.60 for time spent preparing statutory claims and reduced the fee by reviewing his motion calendar and the case file to assess time spent on non-fee claims.
In our view, the trial court's recollection of the case does not serve as an appropriate predicate for determining reasonable attorney's fees. We reverse and remand for an evidentiary hearing to determine reasonable attorney's fees for preparing statutory claims against Maserati. See Folta v. Bolton, 493 So.2d 440 (Fla. 1986); Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985); Caplan v. 1616 East Sunrise Motors, Inc., 522 So.2d 920 *997 (Fla. 3d DCA 1988); Skidmore, Owings & Merrill v. Volpe Constr. Co., Inc., 511 So.2d 642, 645 (Fla. 3d DCA 1987); see also Hamilton v. Palm Chevrolet-Oldsmobile, Inc., 388 So.2d 638 (Fla. 2d DCA 1980); United Servs. Auto. Ass'n v. Kiibler, 364 So.2d 57 (Fla. 3d DCA 1978).
Finally, we address Caplan's cross-appeal. Caplan contends that the trial court erred in finding that it did not have authority to award an attorney's fee in excess of the contract between Caplan and his attorney. We agree. Caplan had a fixed-fee agreement with his counsel to pay an initial fee of $125.00 per hour.[5] The trial court stated that Rowe and Disciplinary Rule 2-106(B) of the Florida Bar Code of Professional Responsibility limit the amount of the fee to the contract provisions. This ruling constituted error. The directive in Rowe that court-awarded fees should never exceed the fee agreement is applicable only to contingent fee agreements. See Ronlee, Inc. v. Arvida Corp., 515 So.2d 372 (Fla. 4th DCA 1987); Alston v. Sundeck Prod., Inc., 498 So.2d 493 (Fla. 4th DCA 1986).
Additionally, we find error in the trial court's failure to provide specific findings in accordance with Rowe. "In determining the hourly rate, the number of hours reasonably expended, and the appropriateness of the reduction or enhancement factors, the trial court must set forth specific findings." Rowe, 472 So.2d at 1151. On remand, the trial court should reevaluate the attorney's fee award pursuant to the formula set forth in Rowe, without limiting the fee to Caplan's initial agreement.
Affirmed in part, reversed in part and remanded with directions.
NOTES
[1] The expert testified that this was not the actual cost of renting a Maserati. She stated that "[t]he $34.00 a day is based upon actual depreciation using special Internal Revenue Code regulations and actual interest that was paid and actual insurance Mr. Caplan paid." The expert also testified that the cost of renting a Maserati at the time of trial was $165.00 per day. Caplan submitted receipts totaling $661.22 for renting a car on approximately 43 days.
[2] Relying on Deemer v. Hallett Pontiac, Inc., 288 So.2d 526 (Fla. 3d DCA), cert. denied, 298 So.2d 416, 419 (Fla. 1974), Maserati contends that rescission and damages are inconsistent remedies so that Caplan cannot recover the purchase price plus loss of use damages. We reject this contention. First, rescission and damages are not necessarily inconsistent remedies. See Armbruster, 437 So.2d at 727 ("Rescission of the escrowed transaction and recovery of damages against the escrowee are not necessarily inconsistent remedies."). Second, § 672.608 (comment 1), Fla. Stat. (1983), states that "the buyer is no longer required to elect between revocation of acceptance and recovery of damages for breach. Both are now available to him... . The remedy under this section is instead referred to simply as `revocation of acceptance' of goods tendered under a contract for sale and involves no suggestion of `elections' of any sort." Cf. Swindel v. General Finance Corp., 265 So.2d 393 (Fla. 1st DCA 1972). See generally Encore v. Olivetti Corp., 326 So.2d 161, 165 n. 2 (Fla. 1976); D. Dobbs, Remedies § 12.17, at 879 (1973) ("the buyer need not `elect' between getting his money back and getting damages for breach of warranty; he may, and quite appropriately, get both, since recovery of the price paid is no longer pinned to the theory of rescission."). Finally, § 681.104(2)(a)2, Fla. Stat. (1983), specifically provides for damages in addition to the purchase price of the car.
[3] Although the jury awarded $33,176.00 in damages under the Lemon Law/Magnuson-Moss claim and $17,000 under the warranty and negligence counts, it did not separately designate the damages allocated to loss of use. We assume that the jury followed the court's instructions, and the $33,176.00 award under the Lemon Law/Magnuson-Moss claim included the purchase price plus collateral charges. Consequently, we conclude that the jury intended the $17,000 as damages for loss of use.
[4] We note that in response to Maserati's motion to compel election of remedies the trial court entered an order directing Caplan to return the vehicle upon satisfaction of the judgment. We agree with the trial court that this order correctly resolves the election of remedies issue. To permit Caplan to retain the car as well as the purchase price would constitute a double recovery. Furthermore, although the jury verdict awarded Caplan $17,000 on the negligence count and $17,000 on the breach of implied warranty count, the trial court correctly included only one award.
[5] The fee agreement letter also stated that "[i]f litigation becomes necessary, then we will have to revisit our fee arrangement to include a retainer." The trial court found that the parties did not attempt to modify this agreement until after the court entered judgment in favor of Caplan; therefore, it refused to consider the modification.