780 So.2d 937 (2001)
Martin Luther KING, Appellant,
v.
KING MOTOR COMPANY OF FORT LAUDERDALE, a Florida corporation, Primus Automotive Financial Services, Inc., a foreign corporation, and Kia Motors of America, Inc., a foreign corporation, Appellees.
No. 4D00-1647.
District Court of Appeal of Florida, Fourth District.
February 14, 2001.
Rehearing Denied April 17, 2001.
*938 Rebecca J. Covey of Law Offices of Rebecca J. Covey, P.A., Fort Lauderdale, for appellant.
W. Scott Powell of Roth, Powell & Pearson, P.A., Winter Park for Appellee-Kia Motors of America, Inc., a foreign corporation.
GROSS, J.
The narrow issue we consider in this case is whether a consumer must be able to furnish clear title to and possession of a motor vehicle in order to bring a circuit court action for damages under section 681.112, Florida Statutes (2000), Florida's Lemon Law, and 15 U.S.C. § 2310(d) (2000) of the Magnuson-Moss Warranty Act.
Appellant Martin Luther King appeals a final order granting with prejudice Kia Motors of America, Inc.'s ("Kia") motion to dismiss three counts against Kia in King's second amended complaint.
Considering an appeal from an order granting a motion to dismiss, we must "treat the factual allegations of the [second amended complaint] as true and consider them in the light most favorable to the appellant." Burtman v. Tech. Chems. & Prods., Inc., 724 So.2d 672, 673 (Fla. 4th DCA 1999).
According to the second amended complaint,[1] King purchased a new 1997 Kia Sephia from King Motor Company of Fort Lauderdale ("King Motor") for a price in excess of $15,000. Kia manufactured the car and warranted that it "was mechanically new, factory furnished and was free of substantial defects."
After King took possession of the car, "numerous problems" arose. King took the vehicle to King Motor to have the problems corrected. After "numerous and/or reasonable opportunities" to fix the defects, King Motor failed to do so. Acting on the manufacturer's behalf, King Motor "continuously represented ... that the automobile would be properly repaired."
On or about December 12, 1998, "after a series of unsuccessful repair attempts," the car "became inoperable and was towed to [King Motor] for repair." King Motor wrongfully refused to repair the vehicle without appellant's agreement to pay for the repairs. While the inoperable car sat on King Motor's lot, the lender repossessed and resold the vehicle.
King brought suit against Kia under Chapter 681, Florida Statutes (2000), the Motor Vehicle Warranty Enforcement Act, also known as the Lemon Law. Although King did not timely file for arbitration under sections 681.109 and 681.1095, he contended that this failure was caused by Kia's noncompliance with section 681.103(3), regarding a manufacturer's obligation to "inform the consumer clearly and conspicuously in writing how and where to file a claim with a certified procedure." He also alleged that Kia violated section 681.104(2), by not giving him the option of replacement or refund, and section 681.103(4), by not providing a "fully itemized, legible statement or repair order." The Chapter 681 count sought money damages, costs, and attorney's fees.
King's second amended complaint also sought recovery against Kia under the Magnuson-Moss Warranty Act, 15 U.S.C. *939 §§ 2301-2312 (1998). He alleged that Kia breached an express warranty that the car "would be free from defects in material and workmanship" and an implied warranty that the car "would be merchantable and at least fit for the ordinary purposes for which such vehicles are used." The Magnuson-Moss counts sought compensatory damages, costs, and attorney's fees.
Citing eleven decisions from Florida New Motor Vehicle Arbitration Boards created under section 681.1095, Florida Statutes, the circuit judge dismissed the Lemon Law claim. The court ruled that because King no longer owned or possessed the Kia, he was not able to furnish clear title to and possession of the motor vehicle to the manufacturer, so that he was not entitled to the statutory remedy of refund or replacement under section 681.104(2)(a). For a similar reason, the court also dismissed the Magnuson-Moss counts, since King was not able to make the car "available" to Kia within the meaning of 15 U.S.C. § 2304(b)(2).

I
The Lemon Law applies to the purchase of new motor vehicles. See § 681.102(15), Fla.Stat. (2000). A stated intent of the statute is
to provide the statutory procedures whereby a consumer may receive a replacement motor vehicle, or a full refund, for a motor vehicle which cannot be brought into conformity with the warranty provided for in this chapter.
§ 681.101, Fla.Stat. (2000).
For a nonconforming[2] vehicle that the manufacturer cannot conform to the warranty, the primary statutory remedy is either a replacement vehicle or a refund, at the consumer's option. See § 681.104(2)(a), Fla.Stat. (2000). The Lemon Law also sets out a procedure for enforcing the consumer's rights to a replacement or refund. In certain circumstances, the Lemon Law provides relief other than the replacement/refund option. See §§ 681.111 & 681.112, Fla.Stat. (2000).
An earlier version of the Lemon Law entitled consumers to a full refund or replacement, but rights under the statute "could only be enforced by filing suit in the appropriate court." Duane A. Daiker, Note, Florida's Motor Vehicle Warranty Enforcement Act: Lemon-Aid for the Consumer, 45 FLA.L.REV. 253, 255 (1993); see § 681.104(5)(a), Fla.Stat. (1987).
In 1988, the legislature extensively revised the Lemon Law to create a more consumer friendly statute. See Ch. 88-95, Laws of Fla.; Daiker, 45 FLA.L.REV. at 255-56. One significant change was the creation of the Florida New Motor Vehicle Arbitration Board as part of a statutory procedure to secure the replacement/refund remedy described in sections 681.101 and 681.104(2)(a). See § 681.109, Fla.Stat. (2000); Ch. 88-95, § 6, at 438, Laws of Fla.
The Arbitration Board is a neutral forum where consumers may obtain relief without having to go through the expense and delay of filing a lawsuit. Abbreviated time frames control arbitrations before a Board. See § 681.1095(6), Fla.Stat. (2000). The statute authorizes a board to "grant relief, if a reasonable number of attempts have been undertaken to correct a nonconformity or nonconformities." § 681.1095(8), Fla.Stat. (2000). Consistent with the language *940 of section 681.104(2)(a), the "relief" contemplated by section 681.1095 is the "delivery of an acceptable replacement motor vehicle or the refund specified in the arbitration award." § 681.1095(9), Fla.Stat. (2000). The "relief" also includes "all reasonably incurred collateral and incidental charges ." § 681.104(2)(a), Fla.Stat. (2000).
A party may appeal a decision by the Board to the circuit court, which reviews the matter by "trial de novo." § 681.1095(12), Fla.Stat. (2000). The party appealing the Arbitration Board's decision carries the burden of proof in the circuit court. See Chrysler Corp. v. Pitsirelos, 721 So.2d 710, 713 (Fla.1998). Where the circuit court upholds a decision of the Board "in favor of the consumer," recovery by the consumer "shall include the pecuniary value of the award, attorney's fees incurred in obtaining confirmation of the award, and all costs and continuing damages in the amount of $25 per day for each day beyond the 40-day period following the manufacturer's receipt of the board's decision." § 681.1095(13), Fla.Stat. (2000). The statute allows the circuit court to double or triple the amount of the total award if it "determines that the manufacturer acted in bad faith." Id.
The Lemon Law favors resolution of cases outside of the court system in either dispute settlement procedures established by a manufacturer under section 681.108 or arbitration before the Board pursuant to section 681.109-681.1095. This preference is implemented by section 681.1095(4), which provides:
Before filing a civil action on a matter subject to s. 681.104, the consumer must first submit the dispute to the [Division of Consumer Services of the Department of Agriculture and Consumer Services], and to the [B]oard if such dispute is deemed eligible for arbitration.
Section 681.1095(4) furthers the intent of the Lemon Law "to resolve motor vehicle warranty disputes in expedited proceedings at less cost to consumers than traditional court proceedings." Chrysler Corp., 721 So.2d at 712.
Obviously, the term "civil action" in section 681.1095(4) cannot refer to the petition appealing an arbitration decision under section 681.1095(10)-(14), since such an appeal presumes a previous submission to arbitration.
Section 681.1095(4) covers an action brought pursuant to section 681.109(7), where the division has rejected a dispute and the consumer "may file a lawsuit to enforce the remedies provided under" Chapter 681. Additionally, another "civil action" contemplated by section 681.1095(4) is that provided in section 681.112, Florida Statutes (2000), which states:
(1) A consumer may file an action to recover damages caused by a violation of this chapter. The court shall award a consumer who prevails in such action the amount of any pecuniary loss, litigation costs, reasonable attorney's fees, and appropriate equitable relief.
(2) An action brought under this chapter must be commenced within 1 year after the expiration of the Lemon Law rights period, or, if a consumer resorts to an informal dispute-settlement procedure or submits a dispute to the division or board, within 1 year after the final action of the procedure, division, or board.
(3) This chapter does not prohibit a consumer from pursuing other rights or remedies under any other law.
Section 681.112 provides for an action for damages caused by a statutory violation, apart from the replacement/refund remedy that is available by following the procedural pathway through arbitration contained in sections 681.109 and 681.1095. By requiring submission to the division and to arbitration, if appropriate, section 681.1095(4) guides consumers in the direction of the broadest remedy and the most streamlined procedure.
*941 Section 681.112(1) uses the term "damages" and indicates that a prevailing consumer may recover "the amount of any pecuniary loss." When discussing the replacement/refund option, the statute uses the terms "refund," "replacement," "relief," and "compliance" with an arbitration decision. See §§ 681.104(2)(a), 681.1095(8) & (9), Fla.Stat. (2000). This difference in terminology indicates that the statute uses the term "damages" to mean something other than the replacement/refund option. As used in section 681.112(1), "damages" should be given its plain and ordinary meaning of pecuniary compensation recovered by a person who has suffered a loss caused by a violation of Chapter 681.
Section 681.112 thus allows for a Chapter 681 damages case in circumstances where a refund or replacement is not an option. Such circumstances might include: (1) a warranty violation under section 681.103 which does not rise to the level of a "nonconformity" under section 681.104 because it does not substantially impair the use, value, or safety of a motor vehicle within the meaning of section 681.102(16); (2) a violation of a provision of Chapter 681 other than sections 681.104 or 681.103, such as section 681.114, pertaining to the resale of returned vehicles; (3) where the refund/replacement remedy does not fully compensate the consumer, see Maserati Autos., Inc. v. Caplan, 522 So.2d 993, 996 (Fla. 3d DCA 1988); or (4) the situation presented in this case, where the consumer cannot take advantage of the refund/replacement option because he cannot furnish clear title to and possession of the motor vehicle.
This interpretation of section 681.112 is consistent with the policy that a statute "enacted in the public interest" should be given a "liberal construction in favor of the public." Dep't of Envtl. Regulation v. Goldring, 477 So.2d 532, 534 (Fla. 1985); see Singer v. Land Rover N. Am. Inc., 955 F.Supp. 359, 363 (D.N.J.1997) (construing New Jersey Lemon Law "liberally to achieve its remedial purpose"); Harmon v. Concord Volkswagen, Inc., 598 A.2d 696, 703 (Del.Super.Ct.1991) (finding "no justification for imposing a technical restraint upon [the Delaware lemon law] whose purpose is to provide relief for the buying public from defective products").
Chapter 88-95 made the Lemon Law more consumer friendly by expanding the reach of Chapter 681 in three ways. First, it provided for an expedited, out-of-court arbitration process to afford consumers the most complete relief. Second, section 9 of Chapter 88-95, rewrote section 681.111 to enlarge the number of Chapter 681 violations that might give rise to a cause of action for an unfair or deceptive trade practice under part II of Chapter 501, Florida Statutes (2000).[3] Third, Chapter 88-95, section 10 added section 681.112, which created a pecuniary remedy for consumers damaged by Lemon Law violations.
We therefore hold that King's inability to "furnish to the manufacturer clear title to and possession of" the Kia under section 681.104(2)(a), did not, for that reason alone, bar a cause of action for damages under section 681.112.
This result is consistent with the Arbitration Board cases cited by Kia. Those decisions indicate that when a vehicle is not available for return to the manufacturer, the consumer is not eligible for relief under Lemon Law arbitration. The only relief provided for in a Chapter 681 arbitration is the replacement/refund option plus collateral and incidental charges. See §§ 681.104(2)(a), 681.1095(8) & (9), Fla. Stat. (2000). Replacement or refund requires the purchaser to return the motor *942 vehicle. The damage remedy is available in circuit court when the arbitration cannot provide relief or is otherwise inappropriate.
We also distinguish cases construing the Pennsylvania Lemon Law, since it does not appear from the decisions that said statute contained a provision like section 681.112, which provides for a damages remedy. See Sinnerard v. Ford Motor Co., No. CIVA 95-2708, 1996 WL 544226 (E.D.Pa.1996); Reeves v. Morelli Hoskins Ford, Inc., 415 Pa.Super. 431, 609 A.2d 828 (1992).

II
We reverse that portion of the trial court's order dismissing the Magnuson-Moss counts. The Magnuson-Moss Act regulates warranties on consumer products distributed in interstate commerce. Section 2304(b)(2) allows a warrantor to require as a condition to replacement of, or refund for, any consumer product, that such product "shall be made available to the warrantor free and clear of liens and other encumbrances." However, the inability of the consumer to make the product "available" does not preclude recovery for damages under the Magnuson-Moss Act.
Section 2310(d) allows for a "[c]ivil action by [the] consumer for damages." Subject to certain statutory requirements, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1); see Suber v. Chrysler Corp., 104 F.3d 578, 589 n. 12 (3d Cir.1997) (interpreting section 2310(d) to mean that "a consumer who is damaged by the failure of a dealer or manufacturer to comply with a warranty obligation can file suit to recover the purchase price plus collateral damages").
We have not considered any other issues in this case, such as whether King complied with section 681.1095(4) or the time limits of section 681.112(2); whether Kia had an "affirmative defense" to King's claim under section 681.104(4), Florida Statutes (2000); whether there was an enforceable express or implied warranty between appellant and Kia; or whether a provision of the federal statute or the terms of any warranty limit or condition recovery.
STEVENSON, J., and LABARGA, JORGE, Associate Judge, concur.
NOTES
[1] It is Kia Motors of America, Inc.'s contention that the engine in Martin Luther King's vehicle seized as a result of a negligent oil filter change at The Pep Boys. In a separate case in the circuit court, King filed suit against The Pep Boys. King Motor Company of Fort Lauderdale determined that the engine damage caused by The Pep Boys was not covered under any warranty given by the seller or manufacturer. Because the circuit court was confined to the allegations of the second amended complaint in ruling on the motion to dismiss, it did not resolve any underlying factual dispute in the case.
[2] The statute defines a "nonconformity" as

a defect or condition that substantially impairs the use, value, or safety of a motor vehicle, but does not include a defect or condition that results from an accident, abuse, neglect, modification, or alteration of the motor vehicle by persons other than the manufacturer or its authorized service agent.
§ 681.102(16), Fla.Stat. (2000). An earlier version of the statute defined a nonconforming vehicle to include a broader, more subjectively determined class of motor vehicles. Section 681.104(2)(a), Florida Statutes (1987), applied where a manufacturer was unable to repair or correct "any default or condition which impairs the use, market value, or safety of the motor vehicle to the consumer." (Italics supplied).
[3] Before the passage of Chapter 88-95, Laws of Florida, section 681.111 applied only to a "misrepresentation by a manufacturer as to the existence of an informal dispute settlement mechanism." § 681.111, Fla.Stat. (1987). Chapter 88-95, section 9 broadened the statute to apply to a manufacturer's "violation" of Chapter 681. § 681.111, Fla.Stat. (2000).