VICKI BARTOW, Plaintiff-Appellee, v. FORD MOTOR COMPANY, Defendant-Appellant.

First District (4th Division)  No. 1—02—2058

Opinion filed July 31, 2003.

Neal, Gerber & Eisenberg, of Chicago (Timothy Ray, Emily L. Mulder, and Thomas Noble, of counsel), for appellant.

Krohn & Moss, Ltd., of Chicago (Jennifer L. Basola, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

This cause was brought by plaintiff Vicki Bartow against defendant Ford Motor Company, pursuant to the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (the Act) (15 U.S.C. § 2301 *et seq.* (2000)), to recover damages for the alleged breaches of written and implied warranties that covered plaintiff's purchase of a 1999 Ford Ranger. Defendant moved to dismiss plaintiff's amended complaint pursuant to section 2—619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—619 (West 2000)) on the basis that plaintiff lacked standing. The trial court denied the defendant's motion, and this appeal followed. For the reasons that follow, we affirm.

On or about December 12, 1998, plaintiff purchased a new 1999 Ford Ranger for $18,718. At the time that plaintiff purchased the Ranger, the car dealership issued her Ford's written warranty for the vehicle, which included 3-year or 36,000-mile "bumper to bumper" coverage. However, from the time plaintiff took delivery of the vehicle, she allegedly encountered repeated problems that constantly required her to bring the vehicle to the shop for repairs. For example, she claimed that "the vehicle persistently vibrated \*\*\*. The engine was defective, and the automobile would ride rough and constantly emit ticking noises due to the engine's flaws. The air conditioning system proved defective. The electrical system of the vehicle was malfunctioning, as evidenced by the windshield wipers coming on by themselves." As a result of those problems, plaintiff claims that defendant attempted to repair her vehicle "on at least ten occasions" and was unsuccessful each time. In other words, plaintiff claims, the defendant was unable to comply with its express and implied warranties because of its inability to fix the defects.

On or about December 18, 2001, plaintiff exchanged the Ranger for a $9,500 trade-in allowance and, thereafter, purchased a 2001 Ford Explorer. Plaintiff filed her initial complaint as to the Ranger on January 16, 2002, and her amended complaint on February 27, 2002. There, she asserted that the Ranger began experiencing defects shortly after she purchased it and that the authorized Ford dealers to whom she had brought the vehicle for repairs were unable to remedy them. In that regard, the complaint set out three causes of action: breach of a written warranty pursuant to the Act (count I); breach of implied warranty pursuant to the Act (count II); and revocation of acceptance pursuant to section 2310(d) of the Act (15 U.S.C. § 2310(d) (2000)) (count III).

On April 5, 2002, defendant filed its section 2—619 motion to dismiss, claiming that the plaintiff no longer had standing to bring her cause under the Act where she did not own the vehicle or the related

warranty at the time she filed suit. On May 29, 2002, after argument, the trial court denied defendant's motion. However, the trial court found that the unique nature of the issue justified a grant of defendant's request for an immediate appeal of the May 29, 2002, order. On July 24, 2002, the defendant timely filed its application for a permissive interlocutory appeal under Supreme Court Rule 308 (155 Ill. 2d R. 308), which we granted on September 13, 2002.

The issue is whether the plaintiff had standing to bring her cause of action where she had sold both the car at issue and its attendant warranty prior to filing her complaint. If the plaintiff needed to be in actual, physical possession of the car at the time she brought this action, then she has no legally recognizable interest in the subject matter of the litigation. Our decision to affirm the trial court rests on our analysis of the Illinois Uniform Commercial Code (the UCC) (810 ILCS 5/1—101 *et seq.* (West 2000)) as well as Illinois case law.

■ ■ Recently, we recited the standard of review for a section 2—619 motion:

"A section 2—619 motion to dismiss raises certain defects or defenses and questions whether a defendant is entitled to judgment as a matter of law. 735 ILCS 5/2—619 (West 2000). When reviewing a motion to dismiss, this court must accept all well-pleaded facts as true (*In re Parentage of M.J.*, 325 Ill. App. 3d 826, 829 (2001)) and view them in the light most favorable to the plaintiff (*Summers v. Village of Durand*, 267 Ill. App. 3d 767, 769 (1994)). The court may consider all facts presented in the pleadings, affidavits, and depositions contained in the record. *Arriola v. Time Insurance Co.*, 296 Ill. App. 3d 303, 306 (1998). On appeal, the standard of review for a motion to dismiss is *de novo*, because the resolution hinges on a question of law. *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 307 (2002)." *Gonnella Baking Co. v. Clara's Pasta Di Casa, Ltd.*, 337 Ill. App. 3d 385, 388 (2003).

We also recently provided a general description of actions brought under the Act:

"The Magnuson-Moss Act creates civil actions for consumers in state or federal court when suppliers, warrantors, or service contractors violate the provisions of the Act. 15 U.S.C. § 2310(d)(1) (1994). Although the Act does not require any consumer product to be warranted (15 U.S.C. § 2302(b)(2) (1994)), if a manufacturer or supplier chooses to warrant a product, the Act imposes specific minimum federal standards for warranties (15 U.S.C. § 2304(a) (1994)). A consumer who prevails against the warrantor may elect repair, replacement, or refund of defective parts. 15 U.S.C. § 2301(10) (1994). If the product cannot be repaired after a reasonable number of attempts, the consumer may elect either a replace-

ment or a refund. 15 U.S.C. § 2304(a)(4) (1994)." *Nowalski v. Ford Motor Co.*, 335 Ill. App. 3d 625, 628 (2002).

■ In addition, we note that the law derived from the Act is governed by a three-tiered structure. The first tier, obviously, is the Act itself, by means of the supremacy clause of the United States Constitution. The supremacy clause provides that "the Laws of the United States *** shall be the supreme Law of the Land *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. As such, "[f]ederal preemption of state law can occur in three circumstances: (1) express preemption, where Congress explicitly preempts state law; (2) implied preemption, where Congress has occupied the entire field (field preemption); and (3) implied preemption, where there has been an actual conflict between federal and state law (conflict preemption). [Citation.]" *Mejia v. White GMC Trucks, Inc.*, 336 Ill. App. 3d 702, 705 (2002). In all three such situations, the Act controls.

However, where the Act does not conflict with state law governing the sales of consumer products, state law—the second tier—then governs. See *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 323 (1999) ("[o]nly to the extent that Magnuson-Moss is applicable to the sale of consumer goods does it supercede inconsistent provisions of the UCC"). As section 2311(b)(1) of the Act states, "[n]othing in this chapter shall invalidate or restrict any right or remedy under State law." 15 U.S.C. § 2311(b)(1) (2000). Moreover, the Act specifically notes that a consumer may bring a suit "for damages or any other legal and equitable relief" under the Act. 15 U.S.C. § 2310(d)(1) (2000). The *Sorce* court recognized as much when it stated, "[i]n analyzing Magnuson-Moss issues, it must be kept in mind that in the first instance the UCC governs sales of goods, including accompanying warranties." *Sorce*, 309 Ill. App. 3d at 322-23.

Lastly, beneath the UCC, lies the third tier: the common law of sales. The Illinois UCC expressly provides:

"Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, unjust enrichment, bankruptcy, or other validating or invalidating cause shall supplement its provisions." 810 ILCS 5/1—103 (West 1998).

■ In the present case, defendant notes that to avail herself of the protections afforded by the Act, the plaintiff must be a "consumer" as defined by the Act. A "consumer" is limited to:

"[a] buyer (other than for the purposes of resale) of any consumer product, any person to whom such product is transferred during

the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." 15 U.S.C. § 2301(3) (2000).

While defendant admits that plaintiff's purchase of the vehicle made her a consumer at the time of purchase, it asserts that her status as a consumer "is not eternal." Instead, defendant claims, "[p]laintiff relinquished all of her interest in the Ranger and its accompanying warranty when she traded in the Ranger for a new vehicle. *** At that point in time, the Dealership became the entity 'to whom such product is transferred during the duration of an implied or written warranty *** applicable to the product.' 15 U.S.C. § 2301(3) [(2000)]."

In other words, defendant asserts, as of the date of plaintiff's sale of the vehicle, the dealership or the subsequent owner of the Ford Ranger was the only party with standing to bring a suit regarding that vehicle under the Act. Defendant claims that public policy also compels that result, where the right to enforce the limited warranty to "repair, replace, or adjust defective parts" stems from ownership of the vehicle. Consequently, defendant concludes that a third party who cannot assert that he or she is currently protected under a warranty "has no ability, or really any reason, to attempt to enforce the *** warranty."

Defendant also notes that the Act allows the warrantor to choose its course of action to remedy the consumer when a breach of warranty by the manufacturer has been established. Specifically, the Act states:

"(10) The term 'remedy' means whichever of the following actions the warrantor elects:

(A) repair,

(B) replacement, or

(C) refund;

except that the warrantor may not elect refund unless (i) the warrantor is unable to provide replacement and repair is not commercially practicable or cannot be timely made, or (ii) the consumer is willing to accept such refund." 15 U.S.C. § 2301(10) (2000).

Moreover, defendant alleges, should a manufacturer elect to refund or replace an item, section 2304(b)(2) of the Act directs:

"A warrantor may require, as a condition to replacement of, or refund for, any consumer product under subsection (a), that such consumer product shall be made available to the warrantor free and clear of liens and other encumbrances, except as otherwise provided by rule or order of the Commission in cases in which such

a requirement would not be practicable." 15 U.S.C. § 2304(b)(2) (2000).

Read in conjunction, defendant asserts that those sections of the Act reveal that a warrantor has a right to elect a remedy and, in the case of an election to replace or refund, the option to require the return of any consumer product as a prerequisite. In the present case, therefore, where plaintiff no longer possesses the Ford Ranger, she can no longer return it to the defendant as provided under the Act, thereby thwarting the remedy options available to the defendant under the Act.

Alternatively, defendant asserts that if we find that the Act does not specifically address whether it is necessary—for purposes of standing—that a potential plaintiff be in actual, physical possession of the warranted *res* or the warranty at the time the plaintiff files suit, the law *derived* from the Act, as governed by the bottom two tiers, also supports its argument. To that end, defendant argues that Illinois law demonstrates that a plaintiff has no standing to bring a cause of action or seek damages on property he or she does not own. See *Landmarks Preservation Council of Illinois v. City of Chicago*, 125 Ill. 2d 164, 175 (1988) (held that two of the plaintiffs had no standing where they had no legally cognizable stake in the status of the property at issue); *Indian Hills Neighbors' Ass'n v. American Cablesystems of Illinois*, 171 Ill. App. 3d 789, 792 (1988) ("Illinois courts have consistently held that a party seeking relief must establish that he has a direct, personal claim related to his own property or that he will suffer injury in his individual capacity to a substantive, legally protected interest. [Citations.]"). Defendant claims that because it is undisputed that the plaintiff lacked ownership of the 1999 Ford Ranger and its warranty prior to filing suit and, in fact, received valuable consideration for the vehicle, she lacked any legally recognizable interest in the suit. Consequently, defendant concludes that plaintiff lacked standing to bring a claim against the defendant, with respect to either the vehicle or its warranty, and that striking her cause of action is appropriate.

■ With regard to plaintiff's status as a consumer, we find that there is nothing in the language of the Act to suggest or imply that the resale of the product at issue precludes recovery for breach of contract. Moreover, it cannot seriously be contended that the plaintiff was not a consumer, as defined by the Act, where she purchased the Ford Ranger for valuable consideration and was entitled to enforce the obligations of the defendant's warranty against the defendant for the time period she owned the Ranger. Therefore, defendant's argument is not well taken.

However, we also find that while plaintiff's sale of the vehicle can-

not prohibit her from any recovery, she is allowed to recover only for the portion of time during which she was entitled to enforce the warranty. Consequently, we do not share the defendant's concern that our interpretation unnecessarily "subject[s] Ford to multiple concurrent suits regarding the same vehicle by multiple parties with standing to enforce the warranty," where each subsequent owner may only recover for the time period during which he or she owned the vehicle at issue and was entitled to enforce the terms of the vehicle's warranty. Regardless of whether the vehicle has 1 owner or 50 owners, each owner is entitled to enforce the warranty as long as he or she possesses it while it remains viable. To hold otherwise would be to actually shorten the life and protection of the warranty as originally created by the manufacturer—something we decline to do.

As to whether plaintiff's resale of the vehicle bars her breach of warranty claim because the resale obviates the remedy options available to the defendant under the Act, we find the Second District's decision in *Lara v. Hyundai Motor America*, 331 Ill. App. 3d 53 (2002), to be controlling. There, the trial court granted the defendant's motion for summary judgment that the Act provided a limited warrantor the right to require the return of a vehicle as a condition to any remedy for a breach of an express warranty. *Lara*, 331 Ill. App. 3d at 61. Defendant argued that because the plaintiff could not return the vehicle at issue, she left herself with no available remedy which, in turn, necessitated entry of summary judgment for the defendant. *Lara*, 331 Ill. App. 3d at 61.

However, the *Lara* court found that because the defendant's warranty was considered "limited," and because the Act only governs "full" warranties, the UCC governed the issue. *Lara*, 331 Ill. App. 3d at 62. It then noted section 2—719(2) of the UCC, which provides that " '[w]here circumstances cause an exclusive or limited remedy [such as repair or replacement] to fail of its essential purpose, remedy may be had as provided in [the UCC].' 810 ILCS 5/2—719(2) (West 1998)." *Lara*, 331 Ill. App. 3d at 62. Ultimately, because the *Lara* court found that a question of fact existed as to whether the "limited remedy of replacement or repair of defective parts failed of its essential purpose," it reversed the trial court's grant of summary judgment to the defendant. *Lara*, 331 Ill. App. 3d at 63.

In the present case, the defendant is also challenging the plaintiff's ability to bring an action under the Act. Here, as in *Lara*, defendant argues that even taking the allegations of her complaint as true, plaintiff's inability to return the Ford Ranger precludes the defendant from exercising two of the possible statutory remedies provided in the Act. And because that limits the remedies defendant may provide to

the plaintiff, defendant concludes that plaintiff's standing in this action is jeopardized. In so arguing, defendant asserts that *Lara* is inapplicable because "standing was not at issue" and "the specter of double recovery was not present." We disagree.

■ As noted, the defendant in *Lara* asserted that it should be entitled to summary judgment because, by allowing her vehicle to be repossessed, the plaintiff left herself with no available remedy. *Lara*, 331 Ill. App. 3d at 61. In the present case, defendant argued that it should be granted judgment on the pleadings pursuant to Code section 2—619 because plaintiff's resale of her vehicle hamstrung the defendant's potential remedial options, thereby depriving the plaintiff of standing. We first observe that Illinois courts repeatedly have characterized section 2—619 motions as similar to summary judgment motions (see *Feldheim v. Sims*, 326 Ill. App. 3d 302, 310 (2001)) and that, in both cases, defendants are pleading the affirmative defense that the plaintiff's actions preclude her from obtaining relief. In other words, both defendants are contesting the standing of the respective plaintiffs in their cases. As we recently noted:

> "In Illinois, to have standing, a plaintiff seeking declaratory relief must present an actual controversy between adverse parties as to which controversy the plaintiff is not merely curious or concerned about the outcome, but possesses some personal claim, status, or right. The alleged injury must be distinct and palpable and directly traceable to the defendant's actions and substantially likely to be prevented or redressed by the grant of such relief. [Citation.]" *AIDA v. Time Warner Entertainment Co., L.P.*, 332 Ill. App. 3d 154, 159 (2002).

Clearly, in both cases, the defendants were challenging whether the plaintiffs' purported injuries were substantially likely to be prevented or redressed by the grant of available relief.

Moreover, we are not taken in by defendant's ghost story of double recovery. Regardless of whether the *Lara* plaintiff and the current plaintiff received compensation for the sale of their vehicles, their suits also sounded in the incidental and consequential damages purportedly incurred during the time period in which each respective plaintiff was entitled to enforce her warranty. Accordingly, where both plaintiffs were seeking to recover the damages attendant to a breach of warranty, the fact that one plaintiff was ultimately compensated for the sale of her car is of no moment.

■ Based on the factual similarities and the virtually identical legal challenges in each case, we are persuaded that the *Lara* court's analysis as to whether the plaintiff has an actual, justiciable controversy controls. Accordingly, because it is undisputed that the

plaintiff in the present case had a limited warranty for her Ford Ranger, we hold that it is no longer governed by the Act, but by the UCC. And where the UCC allows for the potential of granting remedies other than those outlined in the Act (see 810 ILCS 5/2—719(2) (West 2000)), we agree with the trial court that dismissal for a lack of standing, at this stage, is inappropriate. Quite simply, the finder of fact must determine whether plaintiff can be foreclosed from receiving monetary damages instead of replacement or repair. While plaintiff's inability to produce the vehicle at issue may, indeed, make it nearly impossible to calculate those damages, the fact remains that she retains the legal standing to seek them.

Lastly, with regard to the law derived from the Act, we are unpersuaded that Illinois case law supports the defendant's argument. In *Landmarks Preservation Council*, 125 Ill. 2d 164, for example, the supreme court indeed held that two of the plaintiffs had no standing where they had no legally cognizable stake in the status of the building at issue. *Landmarks Preservation Council*, 125 Ill. 2d at 175. However, the court went on to note:

> "None is an owner of this private property or even an owner of adjoining property. As far as we are aware, none has any protectable right to even use the building. Their only interest appears to be the ability to view this private property from a public street. We have previously indicated that aesthetic interests, while not to be disregarded, are not controlling on the question of standing (*Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516), and on the facts of this case we are not convinced of the need to depart from this principle. Nor are we prepared to recognize as a basis for standing an alleged right to participate in a public hearing for participation's sake, at least where, as here, a municipality has bestowed that alleged procedural right apparently not as a legal entitlement but as a tool to assist the municipality in performing its legislative function." *Landmarks Preservation Council*, 125 Ill. 2d at 175.

In other words, the plaintiffs there, unlike the plaintiff in the present case, never possessed any interest *whatsoever* in the property at issue, much less a prior, erstwhile interest.

Likewise, in *Indian Hills*, 171 Ill. App. 3d 789, this court reiterated that a plaintiff "must establish that he has a direct, personal claim related to his own property or that he will suffer injury in his individual capacity to a substantive, legally protected interest. [Citation.]" *Indian Hills*, 171 Ill. App. 3d at 792. In that case, a subsection of the Illinois Municipal Code prohibited any "property owner, condominium association, managing agent, lessee or other person in possession or control of such real estate" (Ill. Rev. Stat. 1985, ch. 24,

par. 11—42—11.1(b)) from interfering with a cable franchisee in the construction and installation of a cable television system. *Indian Hills*, 171 Ill. App. 3d at 791-92.

On appeal, plaintiff claimed that because it was a property association and not an owner of the property in question, it was immune from the Municipal Code. The court disagreed:

> "[W]e fail to perceive that the omission of everyone else from the provisions of the law confers standing for any purpose upon a complete stranger to any property right in the affected territory, for plainly, if property owners do not have the requisite standing under the statute to challenge the operations of [the defendant], *a fortiori*, neither does the plaintiff in the context of this action. Nor are we aware that the frontiers of the maxim of statutory interpretation of *expressio unius est exclusio alterius* have been extended as far as the plaintiff here would take them." *Indian Hills*, 171 Ill. App. 3d at 792-93.

Put another way, the court found that where the Municipal Code divested property owners from standing to dispute the defendant's actions, it would not arrogate the Municipal Code to imply that all non-property owners would have standing. This is entirely unlike the present case, where it is undisputed that the plaintiff had actual, physical control of the vehicle at issue during a time that she was entitled to enforce the vehicle's corresponding warranty.

■ Instead, we find that the UCC and the common law of sales demonstrate that the resale by the buyer does not preclude recovery for breach of warranty. We believe the correct law is stated in 67A Am. Jur. 2d *Sales* § 1242 (2000):

> "Under pre-Code law, the fact that the buyer had resold the goods to a third person in no way affected his right to maintain an action against the seller for breach of warranty. This rule was also applied to a warranty of title. The fact that the buyer resold at an advanced price did not affect his right of action or the rule of damages. It has also been held that the application of the ordinary rule of damages for breach of warranty, namely, the difference between the value of the goods as warranted and the value of the goods as they actually were upon acceptance was not changed or modified by the fact that the purchaser had resold the article at a profit, either by reason of an advance in the market or by reason of an existing contract; the seller could not assert this as a defense, or in mitigation of damages. It has also been held that the fact that the purchaser was fully paid by the subpurchaser did not preclude a recovery by him from the seller on breach of warranty to the full extent of defects existing in the article without regard to the

amount received from the subpurchaser and without regard to the fact that no claim had been made by the subpurchaser on account of defects. Moreover, it has been held that what the buyer received on the resale was of no consequence except as it might tend to illustrate the question of value and incidentally disprove the claim that there was in fact a breach of warranty. Where the warranty required a return of the property in case of a breach thereof and the buyer resold with a similar warranty, he did not thereby waive all right of action for its breach, but on a return to him of the property by the subpurchaser he might, on tender of the same to the seller and the latter's refusal to receive the same, sue therefor.

There appears to be nothing in the Uniform Commercial Code that would change the foregoing rules. In fact, the Code impliedly adopts the principle that a resale does not preclude the right of the original buyer to sue the original seller for breach of warranty or other breach, since it contemplates the possibility that the original buyer may himself, upon being sued for breach by his subpurchaser, 'vouch in' the original seller and tender the defense to him. And in a case decided after the enactment of the Code, it was held that the resale of the defective goods by the buyer was no bar to his recovery of damages for breach of warranty." 67A Am. Jur. 2d *Sales* § 1242 (2000).

In the final sentence of the above discussion, the authors cited *Spoo v. Boothe*, 453 F.2d 405 (9th Cir. 1971) (*per curiam*), where the United States Court of Appeals for the Ninth Circuit reversed a district court's ruling that a buyer's resale of personalty prior to instituting a breach of warranty suit deprived him of status as the real party in interest. The Ninth Circuit simply stated that "the appellant's right to maintain his action for breach of warranty in the sale of personalty is unaffected by the vendee's resale of the property prior to the institution of suit. [Citation.]" *Spoo*, 453 F.2d at 405-06. As plaintiff notes, the cases that support this rule of law are many. See, *e.g.*, *Lewis v. Rountree*, 79 N.C. 122 (1878) (noting that a vendee suing for breach of warranty may recover profits he would have made in a resale had the object been what it was warranted to be); *J.L. Latture Equipment Co. v. Gruendler Patent Crusher & Pulverizer Co.*, 133 Or. 421, 430, 289 P. 1067, 1070 (1930) ("Where the buyer of personal property has resold the property, that fact in no way affects the right to maintain an action for the seller's breach of warranty").

As the trial court here noted, the most recent case on this issue is *King v. King Motor Co. of Ft. Lauderdale*, 780 So. 2d 937 (Fla. App. 2001), where the Florida Court of Appeals found that the resale of the automobile at issue did not justify prohibiting the Magnuson-Moss

claims of the plaintiff. In reversing the trial court and remanding the case for trial on the Magnuson-Moss breach of warranty claims, the *King* court stated that "the inability of the consumer to make the product 'available' does not preclude recovery for damages under the Magnuson-Moss Act." *King*, 780 So. 2d at 942. As no Illinois cases are directly on point, we find *King*, and the similar cases preceding it, to be persuasive case law interpreting the UCC.

In its reply brief, defendant asserts that such a holding contradicts the holdings of many other jurisdictions that "flatly reject" this rule. For example, defendant points out that in *Pfeiffer v. Ford Motor Co.*, 517 N.W.2d 76, 80 (Minn. App. 1994), the Minnesota Court of Appeals noted that under the Magnuson-Moss Act, there is a requirement of return of a car, which is a prerequisite to a remedy. However, as plaintiff points out, the *Pfeiffer* court failed to address the distinction between "full" and "limited" warranties and, therefore, had no opportunity to discuss the possibility that the UCC may govern certain warranties under certain circumstances. Defendant also cites *Mercedes-Benz of North America, Inc. v. Garten*, 94 Md. App. 547, 618 A.2d 233 (1993), for the same premise. However, as the *Lara* court stated, because *Mercedes Benz* does not address whether a limited warranty is governed by any part of section 2304 of the Act, reliance on that case is misplaced. *Lara*, 331 Ill. App. 3d at 60. See also *Berry v. General Motors Corp.*, No. 87—3237 (E.D. Pa. 1989) (court never addressed the "full" and "limited" warranty distinction and, in addition, never ruled on the viability of plaintiff's Magnuson-Moss count).

■ Accordingly, we reject the defendant's assertion that resale of the object at issue precludes a buyer from suing for breach of warranty and affirm the trial court's decision to deny defendant's motion to dismiss.

As an aside, we note that defendant has raised some concerns regarding potential discovery problems for plaintiff's case once and if it goes to trial. See, *e.g.*, 166 Ill. 2d R. 214 (requiring a party to produce for inspection anything relevant to the subject matter of the action where requested by the opposing party); 166 Ill. 2d R. 237(b) (requiring the production at the trial of the originals of those things previously produced in discovery, with the failure to comply potentially resulting in sanctions). However, because these issues do not impact the plaintiff's standing and address only the ability of the plaintiff to prove her cause of action and the extent of her alleged damages, any discussion of these topics at this point is premature. As noted, we believe that plaintiff's road to proving her damages, as well as her

cause of action, will ultimately prove to be long and hard. However, because such issues are not before us, we will not address them.

Affirmed.

HARTMAN and KARNEZIS, JJ., concur.