18018

William H. DURANT, Respondent, v. PALMETTO CHEVROLET COMPANY, INC., Appellant

(129 S. E. (2d) 323)

*Messrs. Burroughs & Green,* of Conway, *for Appellant,*

*Messrs. Long & Long,* of Conway, *for Respondent,* ■

January 22, 1963.

BRAILSFORD, Justice.

In the Civil Court of Horry County, William H. Durant was awarded judgment against Palmetto Chevrolet Co., Inc., on a jury verdict for $1,800.00 as damages for breach of warranty. On this appeal the defendant charges the trial court with error in refusing its motion for a directed verdict and in the admission of evidence.

The complaint, as amended, alleged that plaintiff purchased from the defendant a new Chevrolet automobile in 1959, which the defendant expressly warranted "to be free from defect in material and workmanship, said warranty being limited to one year or before such vehicle has been driven 12,000 miles, whichever event shall first occur and if said defect in material or workmanship occurred within this period, to make the same good by repairing or replacing same." The complaint further alleged that the automobile proved to be defective and the defendant failed, on notice, to correct the defects, all to plaintiff's damage in the sum of $2,000.00.

The answer of the defendant denied having made the warranty claimed by plaintiff and, instead, alleged that it gave to plaintiff a written warranty against defects, limited to making good any defective part or parts within 90 days after delivery or before the automobile should be driven 4,000 miles, whichever event shall happen first. (The warranty, which is quoted in full in the answer, runs from the manufacturer to the dealer, who undertakes to adopt it as his warranty to the purchaser.) The answer then set forth in considerable detail repairs which the defendant had made to plaintiff's automobile and parts replaced by it on some eight occasions between September 8, 1959, and June 22, 1960, and alleged that it had done far more than was required of it by the warranty.

The plaintiff testified that in purchasing the automobile he dealt with Carrol Vaught, a salesman, and Lancey Martin, defendant's sales manager, and that they told him that it was "guaranteed" for 12 months or 12,000 miles. On cross examination he admitted having signed an exhibit styled "Owner's Delivery Report," which reads as follows:

"The undersigned has delivered my new car and fully explained the following features to me:

"VEHICLE OPERATING INSTRUCTIONS, INSTRUMENTS AND C O N T R O L S. CHEVROLET OWNER'S MANUAL AND MAINTENANCE SUGGESTIONS. VEHICLE WARRANTY AND TOURIST PRIVILEGES. 1000 MILE INSPECTION. DEALERSHIP'S SERVICES AVAILABLE TO ME.

"The car appears to be in satisfactory condition having been outwardly inspected by me and the undersigned.

"Signed     WILLIAM H. DURANT
         "OWNER

"I have delivered a new Chevrolet to the above customer as stated and have personally inspected it with him to assure that proper new car delivery preparation by our service de-

partment will insure his future driving pleasure and satisfaction.

"Signed                   A. C. VAUGHT
DEALER REPRESENTATIVE"

Counsel then exhibited to plaintiff a book, to which he referred as a service policy. Plaintiff admitted having had such a book, but did not remember whether it was handed to him, or whether he found it in the automobile. Counsel then called the court's attention to a page of the book entitled New Car Warranty, and of the tenor of the warranty set up in the answer, and moved to strike the testimony as to an oral warranty on the ground that it was excluded by the express written warranty, for which plaintiff had receipted. When the court pointed out that this was a misconstruction of the instrument, counsel resumed his cross examination. Plaintiff testified that before he accepted delivery of the car Martin and Vaught told him that "the motor and the rear end would be took care of for 12 months or 12,000 miles * * * that the warranty covered after the four thousand the transmission, rear end and the motor and any minor things up to four thousand the Company would take care of it.

"Q. So they told you about the four thousand mile warranty?

"A. I knew that all the time.

"Q. So you knew you had this warranty on all of the car but in addition to this they also told you the rear end would be covered up to twelve thousand or a year?

"A. Yes, sir.

"Q. So you knew about the four thousand miles or ninety days?

"A. I think anybody else knows about that that has got a car."

Thereupon, counsel renewed his motion to strike the tesimony relating to an oral warranty, which was refused by the court. The error assigned is that the testimony should have been stricken upon plaintiff's admission "that he had been given a written express warranty."

Plaintiff's admission that he had possession of or was given a book which contained a written warranty was not an admission that he contracted with respect to it. The warranty was not referred to, so far as the record discloses, in any contract signed by plaintiff. In this situation it was incumbent upon the defendant to establish that the restrictive, written warranty was called to plaintiff's attention at the time of the sale. Otherwise, it could not affect his rights. *Reliance Varnish Co. v. Mullins Lumber Co.,* 213 S. C. 84, 48 S. E. (2d) 653; *Stevenson v. B. B. Kirkland Seed Co.,* 176 S. C. 345, 180 S. E. 197; *Black v. B. B. Kirkland Seed Co.,* 158 S. C. 112, 155 S. E. 268. It is implicit in plaintiff's testimony that this was not done. His admissions, which have been quoted, are not conclusive that he knew the terms of the written warranty, or knew that the dealer, with whose agents he contracted, had undertaken to adopt the manufacturer's warranty, so as to exclude any other warranty by it. Whether he did know was a jury issue which, presumably, was properly submited.

It will not be necessary to refer in detail to the defects in the automobile. The record abundantly establishes that serious defects existed which were never effectively repaired. The rear end, which was the most persistent source of trouble, proved defective within 90 days and before the auomobile had been driven 4,000 miles. It was overhauled by the defendant on December 9, 1959, and on three additional occasions between that date and June 22, 1960. In July of 1960, a representative of the manufacturer inspected the car, found it to be defective and promised to send an engineer to attend to it. This was not done until some month or two later, by which time plaintiff had consulted his counsel and determined to bring suit. The defendant's service manager admitted on the stand that they could not or did not fix the automobile so that it would stay fixed for a reasonable length of time.

The evidence was sufficient to support a finding that there was a breach of warranty even if the written warranty should

be found applicable. This is made clear by the opinion in *Cannon v. Pulliam Motor Co. et al.*, 230 S. C. 131, 94 S. E. (2d) 397, which involved a warranty of like tenor, and from which we quote:

"* * * It is equally clear that under the warranty here involved no liability arises until the warrantor, after having been given a reasonable opportunity to remedy the defects, fails or refuses to do so. 77 C. J. S., Sales, §§ 340 and 341; 46 Am. Jur., Sales, Section 732. But he 'does not have an indefinite length of time within which to remedy the defect, and if, after reasonable time therefor, the chattel still fails to conform to the warranty, the buyer may resort to his ordinary remedies.' 46 Am. Jur., Sales, Section 732, page 8. Stated differently, the buyer is not obligated to permit the warrantor to indefinitely tinker with the car in the hope that it might ultimately produce the desired result. * * *

"* * * 'To ineffectually replace the defective parts, leaving the car still defective under normal use and service.' is not a sufficient compliance with the warrantor's obligation. * * *"

Of course, we are required to assume a jury finding that plaintiff was entitled to rely upon the oral warranty, should this be necessary to sustain the general verdict. The exceptions based upon defendant's claim of performance under either of the warranties which should be found applicable to the sale are without merit.

Another exception to the court's failure to direct a verdict assigns as error "that there was no proof of any damages sustained by the plaintiff on which a jury could find a verdict." There can be no question about the sufficiency of the evidence to establish that the breach of warranty resulted in damages to the plaintiff, which is sufficient ground for overruling this exception. However, we have considered defendant's argument that there was no evidence from which the jury could intelligently assess the amount which should be awarded to plaintiff under the applicable measure of damages; that is, the difference between the

value of the automobile as warranted and its value in its defective condition on the date of the sale. The real basis for the contention is the absence of opinion evidence as to the value of the automobile on the date of the sale. Of necessity, such value must be determined in the light of hindsight in a case of this kind. The evidence as to the defects in the car, its failure to perform satisfactorily and the ineffective attempts to repair it during the 12 months after its purchase by plaintiff appear in the testimony in much more detail than have been stated. It also appears that the plaintiff continued to use the car as best he could until March of 1960, in the meantime making unsuccessful efforts to sell or trade it. Its condition continued to deteriorate, and when the rear end "completely wore out," he had it replaced at another garage. Finally, quoting from plaintiff's testimony, "Mr. Williams at the beach took up the paper on it and I bought a Ford from him." The conditional sales contract was in evidence and the plaintiff testified that he had kept up the payments, thus the jury could calculate the amount that Williams allowed plaintiff for the Chevrolet. Most jurors, as average men, are well informed about automobiles. They were capable of evaluating the evidence bearing on value, and we are not convinced that the evidence was legally insufficient to support the verdict.

The remaining exception assigns as error the admission in evidence of the March, 1960, repair bill on the ground of remoteness. Of course, the repair bill was not an element of damages and the term of the warranty had expired before the repairs were made. However, the nature and extent of the repairs have some relevancy as showing that defects which arose during the warranty period were never corrected. The trial Judge did not abuse his discretion by admitting the evidence.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.