## 0265

John H. ELLISON, Appellant, v. HERITAGE DODGE, INC. and Chrysler Corporation, Respondents.

(320 S. E. (2d) 716)

Court of Appeals

*David D. Armstrong,* Greenville, *for appellant.*

*Clifford F. Gaddy, Jr., Mason A. Goldsmith, Jr.,* and *David L. Moore, Love, Thornton, Arnold & Thompson,* Greenville, *for respondents.*

Heard June 1, 1984.

Decided Sept. 13, 1984.

GOOLSBY, Judge:

As we interpret the appellant John H. Ellison's single exception,[1] his appeal presents only the following issue: whether the trial court under the authority of *Durant v.*

---

[1] Although Ellison's exception does not comply with Rule 4, Section 6 of the Supreme Court Rules [*see e.g., Williams v. Regula,* 266 S. C. 228, 222 S. E. (2d) 7 (1976) ], we will consider it nonetheless. *See Baker v. Weaver,* 279 S. C. 479, 309 S. E. (2d) 770 (S. C. App. 1983). The exception reads:

The Trial Judge committed error in granting the respondents' motion as against appellant for an involuntary nonsuit of the close of his case.

*Palmetto Chevrolet, Inc.*, 241 S. C. 508, 129 S. E. (2d) 323 (1963) and *Draffin v. Chrysler Motor Corp.*, 252 S. C. 348, 166 S. E. (2d) 305 (1969), should have denied motions by the respondents Heritage Dodge, Inc., and Chrysler Corporation for an involuntary nonsuit upon the ground that Ellison failed to offer sufficient evidence of damages to support his claim for breach of warranty in the sale of a motor vehicle. We do not think so and therefore affirm the judgment appealed from.

On May 2, 1979, Ellison purchased a 1979 Dodge Trans Van, a motor home manufactured in part by Chrysler and sold by Heritage. The cash price for the van was $17,026.96. Ellison financed the sum of $12,746.00 in monthly installments of $291.00 over a period of 60 months. Chrysler and Heritage gave Ellison a limited warranty that covered the van's "chassis" and "front sections" for 12 months or 12,000 miles, whichever occurred first.

Shortly after buying the van, Ellison began to experience numerous problems with it. He returned the van to Heritage "about fourteen or fifteen times with various complaints." Heritage satisfactorily repaired some defects, but not others.

A month after the warranty expired in May 1980, the van developed fuel pump problems. The van sat unused from that time until September 1980 when Ellison voluntarily delivered the van to the secured creditor, Chrysler Credit Corporation, for it to dispose of. By the time Ellison surrendered the van, he had driven it over 11,000 miles. He had also made all his monthly payments.

The record nowhere discloses any evidence as to the fair market value of van at the time Ellison gave it up to Chrysler Credit.

When passing upon a defendant's motion for involuntary nonsuit, the trial court must consider the evidence in the light most favorable to the plaintiff [*Brown v. Reynolds*, 266 S. C. 41, 221 S. E. (2d) 396 (1975); *Holcombe v. Orkin Exterminating Co., Inc.*, 317 S. E. (2d) 458 (S. C. App. 1984) ]; and if the evidence permits only the inference that the

---

The Court should have denied the motion under the authority of *Durant v. Palmetto Chevrolet, Inc.*, 241 S. C. 508, 129 S. E. (2d) 323 (1963) and *Draffin v. Chrysler Motors Corp.*, 252 S. C. 348, 166 S. E. (2d) 305 (1969), as there was sufficient evidence under these authorities on the issue of damages to establish a question for the jury.

plaintiff has failed to prove the material allegations of the complaint, a duty arises for the trial court to grant the motion. *Collins v. Pilgrim Health & Life Ins. Co.*, 201 S. C. 166, 21 S. E. (2d) 576 (1942). Both sides agree that under the facts of this case the proper measure of damages is the difference between the fair market value of the van in its alleged defective condition at the time of the sale and the van's fair market value if it had been as warranted. S. C. Code of Laws 36-2-714(2) (1976);[2] *Long v. Quality Mobile Home Brokers, Inc.*, 271 S. C. 482, 248 S. E. (2d) 311 (1978); *Cannon v. Pulliam Motor Co.*, 230 S. C. 131, 94 S. E. (2d) 397 (1956); Annot., 99 A.L.R. (2d) 1419 § 7 at 1440 (1965). The parties disagree as to whether the evidence presented by Ellison on the issue of damages establishes a jury question.

It is undisputed that at trial Ellison never called any witness to testify regarding the difference at the time and place of acceptance between the fair market value of the van in its defective condition and the fair market value of the van if it had met the terms of the warranty.

Because Ellison limited the scope of his exception to the holdings in *Durant v. Palmetto Chevrolet, Inc., supra,* and *Draffin v. Chrysler Motors Corp., supra,* which are both pre-Uniform Commerical Code cases, we will consider only the holdings in those two cases in determining the question of whether the trial court committed error when it granted the motions for nonsuit. *See Mishoe v. Atlantic Coast Line R. Co.*, 186 S. C. 402, 197 S. E. 97 (1938).

*Durant* involved an action by an automobile buyer against an automobile dealer for breach of warranty. The dealer argued on appeal that the buyer failed to offer proof that he sustained any damages on which a jury could base a verdict. The Supreme Court rejected the dealer's argument. In doing so, the Court wrote:

> [W]e have considered defendant's argument that there was no evidence from which the jury could intelligently assess the amount which should be awarded to plaintiff

---

[2] Section 36-2-714(2) provides:

The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

under the applicable measure of damages; that is, the difference between the value of the automobile as warranted and its value in its defective condition on the date of the sale. The real basis for the contention is the absence of opinion evidence as to the value of the automobile on the date of the sale. Of necessity, such value must be determined in the light of hindsight in a case of this kind. The evidence as to the defects in the car, its failure to perform satisfactorily and the ineffective attempts to repair it during the 12 months after its purchase by plaintiff appear in the testimony in much more detail than have been stated. It also appears that the plaintiff continued to use the car as best he could until March of 1960, in the meantime making unsuccessful efforts to sell or trade it. Its condition continued to deteriorate, and when the rear end "completely wore out," he had it replaced at another garage. Finally, quoting from plaintiff's testimony, "Mr. Williams at the beach took up the paper on it and I bought a Ford from him." The conditional sales contract was in evidence and the plaintiff testified that he had kept up the payments, thus the jury could calculate the amount that Williams allowed plaintiff for the Chevrolet. Most jurors, as average men, are well informed about automobiles. They were capable of evaluating the evidence bearing on value, and we are not convinced that the evidence was legally insufficient to support the verdict.

129 S. E. (2d) at 326.

*Draffin* also was an action for breach of warranty in the sale of an automobile. As in *Durant,* the dealer argued on appeal that there was an absence of proof as to damages. Again, the Supreme Court held the evidence was sufficient to enable the jury to arrive at the fair market value of an automobile in its alleged defective condition. Speaking through Acting Associate Justice Clarence E. Singletary, the Court stated:

There was no direct testimony by the plaintiff regarding the value of the automobile in its alleged defective condition. However, the jury had before it the purchase price of the automobile. There was testimony by the plantiff, his

wife and his son of defects in the automobile. We believe there was sufficient testimony before the jury to enable it to arrive at the value of the automobile in its alleged defective condition. As stated in *Durant v. Palmetto Chevrolet Co., Inc.*, 241 S. C. 508, 129 S. E. (2d) 323, 326, most jurors, as average men, are well informed about automobiles. Here, as in *Durant*, the jurors had before them value of the automobile on resale.

166 S. E. (2d) at 307.

Our examination of the records in the *Durant* and *Draffin* cases reveals that each of them contained proof of the original sales price of the allegedly defective automobile and evidence as to the fair market value of the automobile when the buyer surrendered its possession. In *Durant*, there was evidence from which the automobile's trade-in value could be ascertained; and in *Draffin*, there was testimony concerning the price the automobile brought at a public auction.

In this case, as in *Durant* and *Draffin* there is in the record evidence as to the original sales price of the motor vehicle and testimony as to defects; however, there is no evidence as to the fair market value of the van when Ellison turned it in to Chrysler Credit. Unlike the jury in *Durant*, the jury in this case could not have calculated a trade-in value of the motor vehicle because, unlike the buyer in *Durant*, Ellison did not trade his motor vehicle in on another one. Rather, Ellison simply delivered the motor vehicle to the secured creditor. What the fair market value of the van was when Ellison gave it over to Chrysler Credit in September 1980 is anybody's guess.

Moreover, we doubt seriously whether most jurors, as average men and women, are as informed about specialty vehicles as they are automobiles.

Because the evidence fails to establish the fair market value of the van in its defective state, the trial court properly granted the motions for nonsuit. Accordingly, the judgment appealed from is

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.