FOURTH DIVISION
FILED: February 28,2007

No. 1-05-3213

| | | |
|---|---|---|
| DARRELL E. SHOOP, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 03 M1 154118 |
| | ) | |
| DAIMLERCHRYSLER CORPORATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | Honorable Vanessa A. Hopkins, |
| (Dempsey Dodge, Defendant.) | ) | Judge Presiding |

JUSTICE MURPHY delivered the opinion of the court:

Plaintiff, Darrell E. Shoop, filed suit against defendant DaimlerChrysler Corporation for breach of express and implied warranties under the Magnuson-Moss Warranty–Federal Trade Commission Act (Magnuson-Moss Act) (15 U.S.C. §§2308, 2310(d) (2000)) when his vehicle required numerous repairs. When plaintiff received more than the fair market value for his car on trade-in, defendant filed a motion for summary judgment, arguing that plaintiff did not suffer a present injury. The trial court granted defendant's motion. Because we find that a genuine issue of material fact existed as to plaintiff's damages at the time of acceptance, we reverse the decision of the trial court.

## I. BACKGROUND

On April 4, 2002, plaintiff purchased a 2002 Dodge Dakota truck for $28,000, excluding bank and finance charges. As part of the purchase, defendant, which manufactured the Dakota, issued a 3-year or 36,000-mile standard limited warranty. Plaintiff alleged that he also entered into a service contract with the dealer, Dempsey Dodge, at the time of the sale. Dempsey Dodge was dismissed from the case after it settled with plaintiff.

Plaintiff began experiencing problems with the truck soon after he took possession. Defects in the engine, suspension, steering, transmission, and other components caused plaintiff to take the truck to a Chrysler dealership 12 times within 18 months for repairs. The Dakota was subject to repair at least five times for the same defect, and that defect remained uncorrected. Plaintiff, contending that defendant was unable to cure the defects after a reasonable number of attempts, allegedly revoked his acceptance of the truck in writing, but defendant refused the revocation. Plaintiff then filed a complaint against defendant alleging breach of written and implied warranties pursuant to the Magnuson-Moss Act (15 U.S.C. §§2308, 2310(d) (2000)).

Plaintiff alleged that as a result of the persistent defects, he traded in his Dakota and purchased a new vehicle on May 6, 2005. He had driven the truck for three years and logged more than 39,000 miles. Plaintiff received $16,500 for the trade-in value of the truck. The NADA guidebook provided that a comparable vehicle in "average" condition would have an average trade-in value of $14,425 and an average retail value of $17,225. Defendant filed a motion for summary judgment alleging that plaintiff did not suffer a present injury or damages because he sold the truck for a price in excess of its fair market value at the time of the trade-in.

1-05-3213

In response, plaintiff submitted affidavits of two witnesses. Based on a visual inspection, a road test, and reviews of the Dakota's service history and technical service bulletins related to the Dakota, Thomas Walters opined that the truck's value was diminished by 35 % at the time of purchase. Walters used the valuation guide of the Kelly Blue Book and his professional experience in estimating the Dakota's diminished value. Walters believed that the Dakota had manufacturing defects at the time of sale. Based on a review of the repair records, plaintiff's second witness, Joseph Pennacchio, opined that the value of the truck at the time of purchase was $22,300.

The trial court granted defendant's motion for summary judgment. No hearing transcripts are included in the record, and the court did not issue a memorandum opinion. This appeal followed.

## II. ANALYSIS

### A. Damages

Summary judgment is appropriate when the pleadings, depositions, and other evidence reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2004). Summary judgment is a drastic means of resolving litigation and should only be allowed when the right of the moving party is clear and free from doubt. *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 50 (1999). Our review of a grant of summary judgment is *de novo*. *Woods v. Pence*, 303 Ill. App. 3d 573, 576 (1999).

The Magnuson-Moss Act provides a consumer with a private cause of action against a

manufacturer or retailer that fails to comply with the Act or the terms of a written warranty or any implied warranty arising therefrom. 15 U.S.C. §2310(d)(1) (2000). When the Act does not conflict with state law governing the sale of consumer products, state law applies. *Bartow v. Ford Motor Co.*, 342 Ill. App. 3d 480, 484 (2003), citing *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 323 (1999). Section 2-714(2) of the Uniform Commercial Code (UCC) provides that the measure of damages for breach of warranty when the buyer has accepted goods and given notice is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have if they had been as warranted, unless special circumstances show proximate damages of a different amount. 810 ILCS 5/2-714(2) (West 2004); *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 106 (2006).

In addition, damages are an essential element of a breach of warranty claim. *Kim v. Mercedes-Benz U.S.A., Inc.*, 353 Ill. App. 3d 444, 460 (2004). The diminished value of a product is a compensable injury in a breach of warranty claim. *Dewan v. Ford Motor Co.*, 363 Ill. App. 3d 365, 369 (2005). While it is not necessary that damages for breach of warranty be calculated with mathematical precision, basic contract theory requires that damages be proved with reasonable certainty. *Burrus v. Itek Corp.*, 46 Ill. App. 3d 350, 357 (1977). Damages based on conjecture or speculation are precluded. *Bockman Printing & Services, Inc. v. Baldwin-Gregg, Inc.*, 213 Ill. App. 3d 516, 527 (1991). Plaintiff claims that the difference between the value of the automobile as warranted and its value in its defective condition on the date of the sale must be determined in hindsight. See *Durant v. Palmetto Chevrolet, Inc.*, 241 S.C. 508, 129 S.E.2d 323 (1963). Furthermore, according to plaintiff, uncertainty as to the amount of damages when there

is no doubt as to the fact of damage will not preclude recovery. *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 75 L. Ed. 544, 51 S. Ct. 248 (1931).

Plaintiff argues that he established damages under section 2-714(2) because two witnesses attested that the value of his car was diminished at the time it was purchased. Defendant responds that plaintiff failed to establish "present damages" because he traded in the Dakota for the fair market value.

This issue appears simple because in response to defendant's motion for summary judgment, plaintiff provided evidence of his damages at the time of acceptance, the point in time when damages are measured for breach of warranty under the UCC. 810 ILCS 5/2-714(2) (West 2004); *Razor*, 222 Ill. 2d at 106. However, we will discuss the issue more extensively because the general requirement that a plaintiff have actual, present damages and the rule in section 2-714(2) that damages are measured on the date of acceptance converge in this case.

Defendant relies on *Valenti v. Mitsubishi Motor Sales of America, Inc.*, 332 Ill. App. 3d 969 (2002), for its contention that plaintiff could not establish "present damages" when he received fair market value when he traded in the Dakota. In *Valenti*, the plaintiff revoked acceptance after she experienced numerous problems with a new car that she purchased. The defendant denied her revocation, and she filed a complaint alleging breach of express warranty and the implied warranty of merchantability under the Magnuson-Moss Act. More than two years after she revoked acceptance, the plaintiff sold the allegedly defective car for its fair market value, as a sales manager at the dealership where the plaintiff received the trade-in credit attested. To establish damages, the *Valenti* plaintiff relied solely on the allegations of her complaint. The court

held that the plaintiff "cannot meet this burden where the undisputed facts show that plaintiff sold the car at its fair market value, despite the alleged defect of which she now complains." *Valenti*, 332 Ill. App. 3d at 973.

*Valenti* is distinguishable from the facts in the instant case. To establish damages, the *Valenti* plaintiff only relied on the allegations of her complaint, which, combined with the rest of the record, established that the "plaintiff purchased a new car for an agreed-upon price, drove it 17,290 miles and traded it in more than 2 1/2 years later for fair market value." *Valenti*, 332 Ill. App. 3d at 973. Here, plaintiff countered defendant's motion for summary judgment with the affidavits of two witnesses, who averred as to the reduced value of the Dakota at the time of acceptance. In addition, the *Valenti* plaintiff did not argue that the vehicle was defective at the time of acceptance, while plaintiff's witnesses here attested that the Dakota was not substantially free of defects at the time plaintiff took possession.

Defendant also cites a number of cases interpreting the damages required under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/10a(a) (West 2004)) in support of its argument. See *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100 (2005); *Hayman v. Autohaus on Edens, Inc.*, 315 Ill. App. 3d 1075, 1078 (2000); *Verb v. Motorola, Inc.*, 284 Ill. App. 3d 460 (1996); *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278 (2006). These cases, while relevant to the general issue of present damages, do not deal with section 2-714, a statute that specifically provides that damages are measured on the date of acceptance. In *Avery*, for example, our supreme court held that the plaintiff failed to show "actual damage" under section 10a(a) of the Consumer Fraud Act

when he sold the truck in question for the same value that he would have received if only original equipment manufacturer parts had been used in the repair. *Avery*, 216 Ill. 2d at 196. Similarly, in *Hayman*, the court found the plaintiff's Consumer Fraud Act case was moot when the defendant sent him a refund before the case was filed, and in *White*, 368 Ill. App. 3d at 287, the plaintiff failed to allege proximate damages under the Consumer Fraud Act.

Although the issue in *Bartow*, 342 Ill. App. 3d 480, was whether the plaintiff had standing to pursue a claim under the Magnuson-Moss Act after selling the vehicle in question, its discussion of damages is also persuasive. In *Bartow*, the plaintiff, who had brought a case for damages pursuant to the Magnuson-Moss Act, traded in her vehicle before she filed her complaint. The defendant moved to dismiss the case on the basis that the plaintiff no longer had standing to bring her case under the Magnuson-Moss Act. *Bartow* held that the UCC and the common law of sales demonstrate that the resale by the buyer does not preclude recovery for breach of warranty. *Bartow*, 342 Ill. App. 3d at 490. We noted, citing 67A Am. Jur. 2d *Sales* §1242 (2000), that the application of the ordinary rule of damages for breach of warranty was not changed or modified by the fact that the purchaser had resold the article at a profit. *Bartow*, 342 Ill. App. 3d at 491.

The plain language of section 2-714(2) provides that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have if they had been as warranted." 810 ILCS 5/2-714(2) (West 2004). Furthermore, Anderson on the Uniform Commercial Code provides as follows:

"The buyer's damages for breach of warranty are not lessened because the buyer has resold the goods at an enhanced price. Had the goods been as warranted, they might have been resold at a still higher price. It is, therefore, immaterial that the goods were actually worth the price for which they were resold. Whether the price received on a resale is evidence of the value of the goods at the time of the breach is another question. Certainly such evidence is not conclusive." R. Anderson, Anderson on the Uniform Commercial Code § 2-714:59, at 424 (3d ed. 1997).

Therefore, we find that where plaintiff produced evidence of the Dakota's diminished value at the time of sale, a genuine issue of material fact existed as to his damages.

While the remedies provided by the UCC are to be "liberally administered with the goal of placing the aggrieved party in as good a circumstance as if the other party had fully performed" (*Toyomenka (America), Inc. v. Combined Metals Corp.*, 139 Ill. App. 3d 654, 660 (1985)), an award should not put a plaintiff in a better position than he would have been in if the contract had been fully performed. *First National Bank of Elgin v. Dusold*, 180 Ill. App. 3d 714, 719 (1989). "When the buyer sues the seller for warranty damages, the general rule specified by the [UCC] for the measurement of the damages must be modified by deducting the profits made on resale." R. Anderson, Anderson on the Uniform Commercial Code § 2-714:223, at 488 (3d ed. 1997). Therefore, plaintiff will not reap a windfall as a result of our conclusion that a genuine issue of material fact existed as to his damages even though he received fair market value at trade-in.

Defendant claims, however, that plaintiff's opinion testimony regarding the value of the Dakota at the time of acceptance is based on speculation and guess because the witnesses did not

1-05-3213

speak to present damages. We first note that defendant did not move to strike the affidavits of plaintiff's witnesses. Defendant, relying on *Verb*, *Anzalone v. Kragness*, 356 Ill. App. 3d 365 (2005), and *Jankoski v. Preiser Animal Hospital, Ltd.*, 157 Ill. App. 3d 818 (1987), contends that plaintiff picked "a diminution in value figure out of thin air." In *Verb*, the plaintiffs failed to plead damages because the complaint was based on the possibility that cellular telephones may be defective because of their unproven safety. Here, however, plaintiff has not alleged that the Dakota *may* have been defective. Rather, he has alleged that the Dakota was defective and that he had to take it in for repairs 12 times in 18 months. Furthermore, *Anzalone* and *Jankoski* are inapposite, as they involve sentimental or emotional damages resulting the wrongful death of a family pet instead of the diminished value of a vehicle under section 2-714 of the UCC.

In addition, because the value of the Dakota at the time of acceptance is important to a damages analysis under section 2-714(2), so, too, are expert opinions attesting to that value. Even lay witnesses are permitted to testify as to the value of property if they have sufficient knowledge of the property and its value. *Razor*, 222 Ill. 2d at 109; *Burrus*, 46 Ill. App. 3d at 358 (there is no requirement that a witness with experience and knowledge as to the value of printing presses be qualified as an expert). Furthermore, in *Mattuck v. DaimlerChrysler Corp.*, 366 Ill. App. 3d 1026, 1034 (2006), we declined to disturb the jury's damage award when the plaintiff's expert testified that he relied on the Kelly Blue Book and opined that the vehicle's defects reduced the vehicle's value by 40 %.

Here, based on a visual inspection, a road test, and reviews of the Dakota's service history and technical service bulletins related to the Dakota, Thomas Walters opined that the truck's

value was diminished by 35 % at the time of purchase. Walters used the valuation guide of the Kelly Blue Book and his professional experience in estimating the Dakota's diminished value. Walters believed that the Dakota had these manufacturing defects at the time of sale. Plaintiff's second witness, Joseph Pennacchio, opined based on a review of the repair records that the value of the truck at the time of purchase was $22,300. Both of these witnesses were experienced in the inspection or appraisal of vehicles. Accordingly, the testimony of plaintiff's opinion witnesses created a genuine issue of material fact that the value of the Dakota was diminished at the time of the sale.

In summary, we find that because damages under section 2-714 are the difference at the time of acceptance between the Dakota as accepted and as warranted, a genuine issue of material fact existed as to plaintiff's damages. Because we find the existence of a genuine issue of material fact, we need not address plaintiff's alternative "cover" damages under section 2-712.

B. Breach of Implied Warranty of Merchantability

Defendant argues that even if we find a genuine issue of material fact as to plaintiff's damages, he cannot recover under the implied warranty of merchantability because the sale of his Dakota was evidence of its merchantability.

Under section 2-314(c)(2) of the UCC, a product breaches the implied warranty of merchantability if it is not fit for the ordinary purposes for which such goods are used. 810 ILCS 5/2-314(2)(c) (West 2004). "[W]ith regard to automobiles, '[f]itness for the ordinary purpose of driving implies that the vehicle should be in a safe condition and substantially free from defects.' " *Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc.*, 342 Ill. App. 3d 150, 159 (2003),

quoting *Overland Bond & Investment Corp. v. Howard*, 9 Ill. App. 3d 348, 354 (1972). Breach of an implied warranty of merchantability may also occur where the warrantor has unsuccessfully attempted to repair or replace defective parts. *Check*, 342 Ill. App. 3d at 150. Whether an implied warranty has been breached is a question of fact. *Check*, 342 Ill. App. 3d at 150.

Defendant, relying on *Alvarez v. American Isuzu Motors*, 321 Ill. App. 3d 696 (2001), contends that the Dakota was fit for the ordinary purpose of driving because plaintiff drove it daily for more than three years after purchase and traded it in for its fair market value. In *Alvarez*, the court held that a " '*prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed "to perform in the manner reasonably to be expected in light of its nature and intended function." [Citations.]' " *Alvarez*, 321 Ill. App. 3d at 703, quoting *Tweedy v. Wright Ford Sales, Inc.*, 64 Ill. 2d 570, 574 (1976). The court found that the only defect of any consequence, a jerking transmission, was remedied, and the plaintiff failed to exclude the buildup of moisture or other materials as a reasonable cause of the problem. *Alvarez*, 321 Ill. App. 3d at 706. Here, however, plaintiff's complaint specifically eliminated any abnormal uses and secondary causes as the source of the defects in the vehicle.

In *Mattuck*, the court rejected the defendant's argument that the implied warranty of merchantability was not breached when the plaintiff drove the vehicle for almost 100,000 miles because the testimony established that the plaintiff had the vehicle serviced no less than six times. In addition, in *Check*, the court held that the jury could have concluded that a defective paint job on a new car rendered it unmerchantable as a new car, and in *Pearson v. DaimlerChrysler Corp.*,

349 Ill. App. 3d 688, 699 (2004), a question of fact existed as to whether the plaintiff's car was in a safe condition and substantially free of defects when an expert testified that poor gas mileage was consistent with a number of defects.

The amended complaint alleged that plaintiff began experiencing problems with the Dakota's engine, suspension and steering, transmission, and other components of the truck soon after he took possession. Plaintiff was required to take the truck to a Chrysler dealership 12 times within 18 months for repairs, and he alleged that defendant was unable to cure the defects after a reasonable number of attempts. When Walters test drove the Dakota, he experienced a loping or jerking sensation when he braked at very low speeds. Furthermore, at highway speeds, a steering wheel shimmy with additional vibration was also present when he braked. He also noticed an intermittent single pop noise from the front suspension when he turned left into plaintiff's driveway. Therefore, a genuine issue of material fact existed as to whether defendant breached the implied warranty of merchantability.

Furthermore, a lack of privity between plaintiff and defendant does not preclude plaintiff's claim. Although the UCC extends a buyer's potential cause of action for breach of the implied warranty of merchantability only to an immediate seller, the privity requirement has been "relaxed" when (1) a manufacturer has extended a written warranty with a product; and (2) a consumer brought an action against the manufacturer under the Magnuson-Moss Act. *Mydlach v. DaimlerChrysler Corp.*, 364 Ill. App. 3d 135, 153 (2005). See *Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 292 (1988); *Szajna v. General Motors Corp.*, 115 Ill. 2d 294, 311 (1986). Defendant does not dispute that a written warranty was provided to plaintiff when he purchased

the vehicle, and his action against defendant has been brought pursuant to the Magnuson-Moss Act. Therefore, defendant was in vertical privity with plaintiff for purposes of plaintiff's implied warranty of merchantability claim. *Rothe*, 119 Ill. 2d at 292; *Szajna*, 115 Ill. 2d at 311.

### III. CONCLUSION

Because a genuine issue of material fact existed as to plaintiff's damages when he received fair market value at trade-in but had evidence of the Dakota's reduced value at the time of acceptance, the trial court's grant of summary judgment is reversed.

REVERSED.

CAMPBELL, J., and NEVILLE, J., concur.

———