FIFTH DIVISION
December 28, 2007

Nos. 1-06-0262, 1-06-1266 (consolidated)

| | | |
|---|---|---|
| FELICE BRESSLER ROSE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| MERCEDES-BENZ U.S.A., LLC, | ) | Honorable |
| | ) | Susan McDunn, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff Felice Bressler Rose brought an action under the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (the Magnuson-Moss Act) (15 U.S.C. §2301 *et seq*. (2000)) for breach of express and implied warranties against defendant Mercedes-Benz after several unsuccessful attempts to repair her 2002 Mercedes ML 500.  Following a bench trial, the trial court entered judgment for plaintiff and awarded her $8,000 in damages.

Defendant now appeals the damage award and the award of attorney fees and costs to plaintiff.  Defendant raises three main contentions pertaining to the damage award: (1) plaintiff suffered no damages for breach of warranty because her vehicle was repaired at no cost to her and plaintiff received full market value for the vehicle at trade-in; (2) plaintiff failed to lay an adequate foundation for her valuation testimony of the ML 500 in its defective state; and (3) no basis exists

Nos. 1-06-0262 and 1-06-1266 (consolidated)

for the $8,000 damage award. Because we agree with defendant on the second point, we reverse the judgment of the trial court.

BACKGROUND

In January 2002, plaintiff bought a 2002 Mercedes ML 500 sport utility vehicle from the Autohaus on Edens, a Mercedes-Benz dealership, for $47,000. The vehicle was covered by a 4-year/50,000-mile written limited warranty.

The following testimony is relevant to the issues presented in this appeal. Between January 2002 and July 2005, plaintiff experienced numerous problems with the ML 500 and brought the vehicle to defendant's dealerships for repair approximately 19 times, including 9 visits to inspect and repair the braking system. Plaintiff offered detailed testimony about the problems she experienced with the vehicle. Some repairs took more than one day to complete, and, by plaintiff's estimation, the dealerships provided her with a replacement vehicle about 80 % of the time.

Defendant does not dispute that the various defects were not repaired in a reasonable time or a reasonable number of attempts. On February 2, 2004, plaintiff filed a two-count complaint against defendant seeking to revoke her acceptance of the vehicle under the Magnuson-Moss Act and seeking damages for breach of express written warranty and the implied warranty of merchantability. In July 2005, plaintiff traded in the ML 500, which she had driven 25,254 miles, toward the purchase of a 2005 Lexus RX 330 sport utility vehicle at McGrath Lexus. Plaintiff received a trade-in allowance of $24,400 for the ML 500.

2

Nos. 1-06-0262 and 1-06-1266 (consolidated)

The sole evidence of the vehicle's diminished value was plaintiff's lay opinion testimony, over the defense's objection, as to how much the ML 500 was worth when she bought it:

"If I would have known I had to go what I've gone through for this Court, I have explained it, I would not have paid anything for this car. But I recognize that I have had the ability to drive the car for very basic purposes, and I think that that adds some value to the car."

Plaintiff was asked her opinion of the value of the ML 500 "when she bought it, on the date that [she] bought it, knowing what you know now." The following colloquy occurred:

"A. I would not pay more than half price. I would not pay more than what I traded my other Mercedes for.

Q. Now, you say you would not pay more than half. Does that give you an opinion as to what you believe it was worth? What is your opinion as to what it was worth?

A. Probably about $25,000. I'm just pulling you a number out of my head. About 50 percent of what I paid."

The defense objected that plaintiff's testimony was speculative and lacking in foundation. Plaintiff then stated:

"That's not how I meant it. I meant it what 50 percent was [*sic*] of what I paid. I don't remember the exact number that I paid for that."

The trial court heard the parties' arguments as to the defense objection, and the court allowed plaintiff's counsel to ask "clarifying questions" about plaintiff's testimony:

3

"Q. Mrs. Rose, when you said $25,000 what is it that you meant by that?"

A. 50 percent of what I paid.

Q. Okay. You paid $47,000; is that correct?

A. Correct.

Q. Doing the math, then, is your opinion that the vehicle was worth $23,500?

A. If that's 50 percent, yes."

When asked the basis for that opinion, plaintiff described her trade-in of a Mercedes for $29,000 when she bought the ML 500. Plaintiff stated that she drove the first Mercedes for 3½ years and it had more miles on it than the ML 500 did at trade-in. Plaintiff testified that her opinions were based on "the research I've done, the salespeople I talked to, and everything I did to become an educated consumer." Over continued defense objections, the court stated that it accepted plaintiff's testimony as a lay opinion, ruling that the defense arguments would "go towards [the] weight" to be given that testimony.

The defense presented, among other evidence, the testimony of Frank Tabachka, formerly a salesperson and manager at McGrath Lexus. Tabachka's duties included appraising the value of automobiles, and he appraised plaintiff's ML 500 at trade-in. The wholesale value of the ML 500 was $25,000, and the dealership gave a $24,400 trade-in allowance toward the Lexus. Tabachka testified that $24,400 was the fair market value of the ML 500. Over plaintiff's objection, Tabachka testified that the $25,000 appraisal for the ML 500 was not based on the vehicle's service history or mechanical condition.

4

Nos. 1-06-0262 and 1-06-1266 (consolidated)

At the close of evidence, the trial court concluded that defendant breached its express and implied warranties to plaintiff. The court awarded plaintiff "diminished value damages" of $8,000. The court accepted plaintiff's lay opinion testimony, finding that it met the foundational factors set out in *Kim v. Mercedes-Benz U.S.A., Inc.*, 353 Ill. App. 3d 444, 818 N.E.2d 713 (2004). The court noted plaintiff's testimony that she researched the vehicle and applied that research to her valuation of the car on the date it was purchased, compared to the value of the car had it been as warranted. The court stated that it did not award damages to plaintiff for loss of use, aggravation or inconvenience, but rather, in arriving at the damage award, the court considered the mileage accumulated on the car and the benefit of the repairs that were performed.

On December 21, 2005, the trial court entered judgment for plaintiff for breach of express and implied warranties, and the court awarded plaintiff $8,000 in damages. On March 29, 2006, the court granted plaintiff's claim for attorney fees and costs in the amount of $31,565.65.

ANALYSIS

On appeal, defendant contends that plaintiff sustained no damages because she did not pay for any repairs and she received the full market value for the vehicle when she traded it in. Defendant also argues that plaintiff failed to establish an adequate foundation for her opinion testimony as to the value of the ML 500 when she purchased it in its allegedly defective state. We consider each of those arguments in turn.

5

Nos. 1-06-0262 and 1-06-1266 (consolidated)

## I. Existence of Recoverable Damages

Defendant asserts that plaintiff is only entitled to recover damages that she sustained, and because the ML 500 was repaired at no cost to plaintiff and she received what was testified to as the "full fair market value" when she traded in the vehicle, she suffered no damages. We address this issue at the outset because if plaintiff has not incurred damages, she cannot state a claim for breach of warranty. See *Valenti v. Mitsubishi Motor Sales of America, Inc.*, 332 Ill. App. 3d 969, 973, 773 N.E.2d 1199, 1203 (2002).

The Magnuson-Moss Act supports an action against a manufacturer for the failure to comply with the terms of a written or implied warranty. 15 U.S.C. §2301(d)(1) (2000). Absent a conflict between the Magnuson-Moss Act and a state's law governing the sale of consumer products, state law applies. *Zwicky v. Freightliner Custom Chassis Corp.*, 373 Ill. App. 3d 135, 143, 867 N.E.2d 527, 534 (2007). Thus, we consider the applicable Illinois enactment of the Uniform Commercial Code (the Code) (820 ILCS 5/1-101 *et seq.* (West 2004)).

Under section 2-714(2) of the Code, damages for breach of warranty are measured by "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." 810 ILCS 5/2-714(2) (West 2004). Here, plaintiff argues that the value that she received "upon disposition," *i.e.*, at trade-in, does not preclude her recovery under section 2-714. Plaintiff claims that, without the car's mechanical defects, she would have received more than $24,400 at trade-in.

Defendant contends that plaintiff did not establish that the difference between the $47,000 purchase price and the $24,400 that she received 3½ years later when she traded in the ML 500

6

Nos. 1-06-0262 and 1-06-1266 (consolidated)

could be attributed to a defect in the vehicle or to anything besides normal depreciation. Defendant urges this court to follow *Valenti*, in which the plaintiff traded in a Mitsubishi Galant for a credit of $11,000 after driving the Galant for 2½ years and more than 17,000 miles. *Valenti*, 332 Ill. App. 3d at 973, 773 N.E.2d at 1203. According to the manager of preowned vehicles where the plaintiff traded in the Galant, $11,000 was the Galant's "fair market value" at the time of the trade-in. *Valenti*, 332 Ill. App. 3d at 972, 773 N.E.2d at 1202. The appellate court affirmed summary judgment in favor of the carmaker, concluding that the plaintiff did not establish damages because the plaintiff sold the car at its fair market value. *Valenti*, 332 Ill. App. 3d at 973, 773 N.E.2d at 1203.

In distinguishing *Valenti*, plaintiff cites, as supplemental authority, *Shoop v. DaimlerChrysler Corp.*, 371 Ill. App. 3d 1058, 1060-61, 864 N.E.2d 785, 787 (2007), which was decided during the pendency of this appeal. In *Shoop*, the plaintiff purchased a 2002 Dodge Dakota truck for $28,000, traded it in about three years later, and received a $16,500 credit toward a new vehicle. *Shoop*, 371 Ill. App. 3d at 1059-60, 864 N.E.2d at 787-88. In response to the defendant automaker's motion for summary judgment asserting that the plaintiff did not suffer damages due to the value received at trade-in, the plaintiff presented affidavits of two witnesses that the truck's value was diminished by manufacturing defects when the plaintiff bought it. *Shoop*, 371 Ill. App. 3d at 1060, 864 N.E.2d at 787. The trial court granted the carmaker's motion for summary judgment. *Shoop*, 371 Ill. App. 3d at 1060, 864 N.E.2d at 787.

On appeal, this court reversed the grant of summary judgment, concluding that a genuine issue of material fact existed as to the plaintiff's damages, given the evidence of diminished value.

7

Nos. 1-06-0262 and 1-06-1266 (consolidated)

*Shoop*, 371 Ill. App. 3d at 1063, 864 N.E.2d at 790. The automaker in *Shoop* asserted that the plaintiff did not suffer a "present injury" because he received more than the fair market value for his car upon trade-in. *Shoop*, 371 Ill. App. 3d at 1059, 864 N.E.2d at 786. However, the court concluded that the attestations of the plaintiff's witnesses created an issue of fact as to whether the vehicle's value was diminished at the time it was sold to the plaintiff. *Shoop*, 371 Ill. App. 3d at 1063, 864 N.E.2d at 790. The court noted that the affidavits averring the reduced value of the truck distinguished the facts before it from those in *Valenti*, in which the plaintiff relied only on the allegations of her complaint and the record to establish diminished value. *Shoop*, 371 Ill. App. 3d at 1062, 864 N.E.2d at 789, citing *Valenti*, 332 Ill. App. 3d at 973, 773 N.E.2d at 1203.

Pointing to *Shoop*, plaintiff asserts that she established damages even though she traded in the vehicle. We find this case to be procedurally distinguishable from both *Shoop* and *Valenti*, which were appeals from summary judgment motions. In *Shoop*, two witnesses attested to the vehicle's value at the time of purchase, and the appellate court determined that evidence was sufficient to establish a genuine issue of material fact as to the plaintiff's damages. *Shoop*, 371 Ill. App. 3d at 1062, 864 N.E.2d at 789. The testimony in *Shoop* did not establish that the plaintiff suffered damages; rather, a question of fact existed that precluded summary judgment.

*Shoop* demonstrates that, given the proper proof, a plaintiff can recover damages even if he or she has traded in a vehicle for fair market value. *Shoop*, 371 Ill. App. 3d at 1063, 864 N.E.2d at 790. Indeed, this court has endorsed the theory of such a damage award, interpreting the Uniform Commercial Code and the common law of sales. See *Bartow v. Ford Motor Co.*, 342 Ill. App. 3d 480, 490-91, 794 N.E.2d 1027, 1035-36 (2003), quoting 67A Am. Jur. 2d Sales

8

Nos. 1-06-0262 and 1-06-1266 (consolidated)

§1242 (2000). We restate a portion of that treatise quoted in *Bartow*:

> "[T]he application of the ordinary rule of damages for breach of warranty, namely
> the difference between the value of the goods as warranted and the value of the
> goods as they actually were upon acceptance *was not changed or modified by the*
> *fact that the purchaser had resold the article at a profit*, either by reason of an
> advance in the market or by reason of an existing contract; the seller could not
> assert this as a defense, or in mitigation of damages." (Emphasis added.) 67A
> Am. Jur. 2d Sales §1242 (2000).

*Bartow* addressed a plaintiff's standing under the Magnuson-Moss Act after she sold the allegedly defective vehicle, and the court concluded that the resale of the vehicle did not preclude the recovery of damages. *Bartow*, 342 Ill. App. 3d at 490, 794 N.E.2d at 1035. *Shoop* discussed that holding in *Bartow* in the context of the proof required to overcome the defendant's motion for summary judgment. *Shoop*, 371 Ill. App. 3d at 1063, 864 N.E.2d at 789.

Thus, having determined that a plaintiff can recover damages even when the vehicle has been traded in for fair market value, this court proceeds to consider whether plaintiff produced sufficient evidence to support her damages award.


II. Plaintiff's Valuation Testimony

The trial court awarded plaintiff damages based on the diminished value of the vehicle at the time she bought it. On appeal, defendant renews its contention that plaintiff did not establish personal knowledge of the ML 500 in its allegedly defective state to support her lay opinion

9

Nos. 1-06-0262 and 1-06-1266 (consolidated)

testimony that the vehicle was worth $23,500 when she bought it. Defendant asserts that the trial court erred in allowing plaintiff to base her opinion testimony on automobile publications and her experience of prior auto purchases.

Since this case concluded in late 2005, the Illinois Supreme Court has reiterated that a lay witness can offer an opinion as to the value of personal property if the witness has sufficient personal knowledge of the property and its value. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 109, 854 N.E.2d 607, 627 (2006); see also *Wausau Insurance Co. v. All Chicagoland Moving & Storage Co.*, 333 Ill. App. 3d 1116, 1128, 777 N.E.2d 1062, 1073 (2002).

In *Razor*, the supreme court found speculative a jury's $5,000 damage award, calling it a "suspiciously round number." *Razor*, 222 Ill. 2d at 109, 854 N.E.2d at 627. The court concluded that the plaintiff's attempt to establish damages was stopped short by what it deemed the trial judge's "preemptive[]" ruling that the plaintiff could not testify as to the value of the vehicle in its defective state. *Razor*, 222 Ill. 2d at 109, 854 N.E.2d at 627-28. The supreme court held that the plaintiff should have been allowed to testify as to what she would have paid for the car in question had she known of the defects, but cautioned that "there must be an adequate showing of the basis for such testimony before it will be allowed." *Razor*, 222 Ill. 2d at 109, 854 N.E.2d at 627-28. The court remanded for a new trial on damages at which the plaintiff's counsel must not be "precluded from attempting to lay a foundation" for her knowledge of the value of the car in its defective state; the court noted, however, that the ultimate sufficiency of the foundation presented would be left to the discretion of the trial court. *Razor*, 222 Ill. 2d at 110, 854 N.E.2d at 628.

Additionally, this court recently concluded in *Kim* that the plaintiff's testimony in that case

10

Nos. 1-06-0262 and 1-06-1266 (consolidated)

was not sufficient to lay a foundation for the diminished value of the vehicle in question, although the court first concluded that the plaintiff's proposed testimony was not disclosed under Supreme Court Rule 213(f). See *Kim*, 353 Ill. App. 3d at 454-55, 818 N.E.2d at 722, citing 210 Ill. 2d R. 213(f). The court held that even had the testimony been properly disclosed, the plaintiff provided no evidence or testimony of personal knowledge of the subject vehicle "in its allegedly defective state" and therefore did not lay an adequate foundation for the diminished value of the vehicle. *Kim*, 353 Ill. App. 3d at 457, 818 N.E.2d at 724.

Here, in contrast to the result in *Kim*, the trial court found adequate disclosure and allowed plaintiff's lay opinion testimony as to what she would have paid for the car had she known of the mechanical problems. In response to defendant's interrogatories, plaintiff disclosed, *inter alia*, that she would "offer lay person testimony regarding [her] subjective belief as to the diminished value of the subject vehicle at the time the vehicle was purchased and/or leased" and, further, that plaintiff would testify that the value of the ML 500 "was diminished by as much as 50% (or less) of the purchase/lease price." In plaintiff's discovery deposition, she stated that before she bought the ML 500, she knew the "general price range" of the car from advertising. She also researched the vehicle at the Mercedes-Benz website and read magazines and the Chicago Tribune.

At trial, during plaintiff's testimony, the court overruled numerous defense objections pending its ultimate ruling on the admissibility of plaintiff's lay opinion of the value of the ML 500. In overruling one objection, the court stated:

"You don't have to be an expert to give an opinion as to value. So I have to hear

11

what her experience has been and what her knowledge has been in order to decide whether she is qualified to given an opinion as to value."

Plaintiff was asked her opinion of the value of the ML 500 on the date she purchased it, in its allegedly defective condition, based on her research and knowing what she knew at the time of trial regarding the mechanical problems. Plaintiff testified that, considering the problems she experienced with the ML 500, the vehicle was worth $23,500, or half of its $47,000 purchase price, at the time she bought it.

Consistent with her discovery deposition, plaintiff testified at trial that she researched her purchase in various publications and using the Internet. The publications and Internet sites listed vehicles for sale along with their description, mileage and asking price. One site calculated a vehicle's price from information provided by the user, including whether a transaction was between private parties or with a dealership.

The trade publications indicated the impact of an automobile's condition on its value, categorizing vehicles as normal, fair or poor. Plaintiff noted a 10 % difference in value between vehicles in the different categories. She testified that she "didn't have the same expectation" of a used vehicle as she did of a new vehicle and would pay more for a new car.

To establish an appropriate foundation as to the value of personal property, a lay witness should be able to testify, at a minimum, as to his or her: (1) familiarity with the property in question; (2) actual knowledge of the value of the subject property; and (3) the basis of the knowledge of that value, "*i.e.*, how, when and where the witness obtained the knowledge." *Kim*, 353 Ill. App. 3d at 456-57, 818 N.E.2d at 723. The trial court's exclusion or admission of

Nos. 1-06-0262 and 1-06-1266 (consolidated)

evidence will not be reversed absent an abuse of discretion, meaning that no reasonable person would adopt the court's view. *Razor*, 222 Ill. 2d at 110, 854 N.E.2d at 628; *Kim*, 353 Ill. App. 3d at 452, 818 N.E.2d at 720.

The rationale of admitting lay opinion testimony is that certain topics can be discussed without special knowledge, provided that the facts upon which those opinions are based are set out and made understandable to the jury and/or the court. See *Kolstad v. Rankin*, 179 Ill. App. 3d 1022, 1030, 534 N.E.2d 1373, 1378 (1989) (allowing lay opinion testimony as to noise levels in nuisance suit against neighboring firing range). The court in *Kim* noted, and our research leads us to agree, that Illinois courts have not established more specific factors necessary to establish a proper foundation for the valuation opinion of a lay witness. See *Kim*, 353 Ill. App. 3d at 456, 818 N.E.2d at 723.

Here, in concluding that plaintiff presented an adequate foundation for her testimony of the value of the ML 500 in its defective state, the court noted that plaintiff "was familiar with the [vehicle], she owned it, she used it, she drove it, she brought it in for the repairs and she had actual knowledge of the value of the subject property and she had knowledge of this vehicle." The court also noted plaintiff's testimony of trading in her first Mercedes and her research in automobile publications before buying the ML 500 established her knowledge of the vehicle's value in its allegedly defective state.

Here, plaintiff did what any prudent consumer does before making a large purchase; she researched a product and the market's established price for that product in 2002 to determine the

Nos. 1-06-0262 and 1-06-1266 (consolidated)

amount she reasonably should pay for a new Mercedes ML 500.[1]  Plaintiff's opinion testimony was rooted in knowledge gleaned as a buyer of a new vehicle, and she possessed sufficient personal knowledge of the value of the ML 500 as new.  However, it is necessary to distinguish that testimony from her lay opinion testimony of the value of the vehicle in its defective state.

We cannot help but note, as a practical matter, that plaintiff received a larger monetary credit when she traded the ML 500 in ($24,400) than she opined the car was worth when she bought it.  Plaintiff's testimony that, in hindsight, she would have paid $23,500 for the vehicle as new, given the mechanical defects, is comparable to the testimony that was excluded in *Razor*.  In *Razor*, the supreme court held that the plaintiff could testify as to what she would have paid for the vehicle knowing of its defects, but the court cautioned that an adequate basis must be established for the personal knowledge of the value of the car in its defective condition.  *Razor*, 222 Ill. 2d at 109, 854 N.E.2d at 627-28.

Here, plaintiff confronts the same obstacle that arose in *Razor* and in *Kim*: the necessity of establishing a foundation for her knowledge of the vehicle in its defective state.  Although plaintiff presented her knowledge of the value of the vehicle as new and set out the factors on which she based her opinion, she did not provide the basis of her testimony that the ML 500 was worth $23,500 in its defective state at the time of purchase.

Plaintiff drove the ML 500 and drove it for 3½ years and more than 25,000 miles before

---

[1]In *Behrens v. W.S. Bills & Sons, Inc.*, 5 Ill. App. 3d 567, 577, 283 N.E.2d 1, 7 (1972), the court admitted the plaintiffs' use of a catalog to support an opinion as to the value of damaged fixtures, noting that such opinion testimony could be based on "a knowledge of prevailing prices of such items based on shopping with friends, window shopping, noticing newspaper advertisements and hearing radio advertisements."

trading it in and receiving the fair market trade-in value of $24,400 toward the purchase of another vehicle. Due to numerous repairs, plaintiff contended that the value of the ML 500 was diminished at the time she bought it. However, in stating her opinion of the diminished value, plaintiff, by her own admission, "pulled a number out of her head," to paraphrase her testimony. In making that estimation, plaintiff arrived at a conspicuously round figure for the value of the vehicle in its defective state: 50 % of its $47,000 purchase price, or $23,500.

In discussing opinion testimony by lay witnesses, it has been observed:

"If the basis of the opinion includes so many varying or uncertain factors that the lay witness is required to guess or surmise in order to reach an opinion, the opinion is objectionable as speculation or conjecture." M. Graham, Cleary & Graham's Handbook of Illinois Evidence, §701.1, at 597 (7th ed. 1999).

Plaintiff's specific assertions on appeal illustrate the uncertainty of her valuation. First, she points to her trial testimony that she traded in her first Mercedes for $29,000 when she bought the ML 500. That testimony was apparently intended to illustrate that because plaintiff drove the first Mercedes for 3½ years and it had more miles on it than the ML 500 did at trade-in, she should have received more for the ML 500 at trade-in than the $29,000 she received for the first Mercedes. However, that testimony did not establish the value of the ML 500 at trade-in or that the ML 500 was worth $23,500 at the time of purchase, as opposed to the $47,000 that plaintiff paid. In addition, plaintiff's testimony was countered by Tabachka's statement that plaintiff received the fair market value of the ML 500 at trade-in, which was $24,400.

Additionally, plaintiff's description of her research in automobile value guides and the

10 % difference in value between a vehicle in good condition, fair condition or poor condition also does not support her $23,500 valuation. Although plaintiff repeatedly points to her testimony on that point, and although Tabachka testified that those guides are used in the car industry to determine value, plaintiff did not attempt to perform the necessary calculations. In any event, a 20 % or even a 30 % difference between a vehicle in good condition and one in poor condition would not result in the reduction in value of a $47,000 vehicle to $23,500 at the time of purchase, a reduction of 50 %.

Plaintiff further contends that the cost of repairs to the ML 500, which plaintiff asserts was more than $8,000, is additional evidence of the existence of damages. However, although plaintiff refers to receipts for those repairs, she directs this court to a supplemental record containing recall notices concerning the vehicle. Even if such receipts were provided, plaintiff concedes that the cost of repair is not the measure of damages to be used here (see *Kim*, 353 Ill. App. 3d at 460-61, 818 N.E.2d at 726-27), and she acknowledges that she did not incur those costs, since the vehicle was repaired pursuant to the warranty.

Plaintiff also asserts that a strict approach to lay opinion testimony contradicts the rationale allowing such evidence. Plaintiff contends that if she is not allowed to base her lay opinion on outside sources such as newspapers, automotive publications and websites, she is effectively required to render an expert opinion based on scientific or technical knowledge, thus eroding the purpose of a lay opinion. We do not hold that such sources cannot ever provide the foundation of a witness's lay opinion; rather, we have concluded that plaintiff failed to establish that the outside sources in this case educated her as to the value of the ML 500 in its diminished

16

Nos. 1-06-0262 and 1-06-1266 (consolidated)

state such that her lay opinion testimony was supported. The trial court's acceptance of plaintiff's testimony as establishing the diminished value of the vehicle constituted an abuse of discretion.

CONCLUSION

Because plaintiff failed to establish an adequate basis for her lay opinion testimony of the value of the ML 500 in its defective state, the trial court's acceptance of that testimony constituted an abuse of discretion. Thus, the court's rulings on the breach of warranty claims are reversed because plaintiff has failed to establish damages.

Accordingly, the December 21, 2005, order granting judgment to plaintiff on her warranty claims and awarding $8,000 in damages is reversed, as is the March 29, 2006, order awarding plaintiff attorney fees and costs in the amount of $31,565.65. Given that disposition, we reject plaintiff's request to file, pursuant to section 2310(d)(2) of the Magnuson-Moss Act (15 U.S.C. §2310(d)(2) (2000)), a supplemental fee petition for attorney fees and costs incurred in this appeal.

Reversed.

FITZGERALD SMITH, P.J., and O'MARA FROSSARD, J., concur.

17